| 6 | 223 |
| 71 | 331 |

ATWATER *against* The inhabitants of the town of WOODBRIDGE.

An ecclesiastical society, established by local limits, before the adoption of the constitution of this state, is not, by that constitution and the subsequent laws relating to religious societies, divested of its local character.

The statute of 1702, exempting from taxation all such lands, tenements, hereditaments and *other estates* as had been, or should be given, for the maintenance of the ministry of the gospel, extends to money at interest given for that object.

This statute has never been expressly, or by fair implication, repealed.

By this statute, the government made a contract with all such persons as should give their property to the uses therein specified, that it should be forever exempted from taxation; and so long as such property is applied to those uses, the government has no constitutional right or power, either directly or indirectly, to rescind or impair such contract.

Therefore, where sundry individuals, in 1809, gave to the society of *B.*, an ecclesiastical society, established, by local limits, in the town of *W.*, in money and lands, a fund of 4,500 dollars, for the sole purpose of supporting the ministry of the gospel in that society, by an annual appropriation of the interest; and in 1821, this fund being loaned out, secured by bonds and notes of responsible persons, at 6 *per cent.* interest, with a view of appropriating the interest, as it invariably had been, to such purpose, the town of *W.* laid a tax on such society in respect of its fund, as money at interest, and collected the amount, by distress, of one of its members; it was held, in an action for money had and received, brought by him, against the town, that such tax was illegal, and the plaintiff was entitled to a recovery.

*It seems,* that the private property of the members of an ecclesiastical society, duly organized, may be taken on a legal warrant against the society.

This was an action of *indebitatus assumpsit* for money had and received, by the defendants, for the use of the plaintiff.

The society of *Bethany* is an ecclesiastical society, established, by local limits, within the town of *Woodbridge*, and has a fund for the support of the gospel ministry, amounting to about 4,500 dollars; which, in the years 1820 and 1821, was loaned out to individuals, and secured by bonds or notes of responsible persons, bearing an interest of 6 *per cent per annum.* This fund was established as early as the year 1809; having been given or granted to the society, by members of the society and others, partly in lands and partly in money, for the sole and ex-

clusive purpose of supporting the gospel ministry in the society, by an annual appropriation of the interest. The interest, which has hitherto accrued, has been invariably appropriated to this purpose, and to no other. At a legal town meeting, on the 1st of *October*, 1821, the town of *Woodbridge* laid a tax of 4 cents and 5 mills on the dollar, on the polls and ratable estate of that town, on the list of 1820, to defray their necessary expenses. In this list the society of *Bethany* was included, and was assessed, in respect of its fund, 270 dollars, the tax on which was 12 dollars, 15 cents. A rate-bill, including this tax, accompanied by a warrant, was made out and delivered to *Mark Sperry*, the collector, who made distress of the property of the plaintiff, a member of the society, and collected the amount. To recover back the money so obtained, the present action was brought.

A case embracing these facts, was agreed to, by the parties, and reserved for the advice of this Court, as to the proper judgment to be rendered thereon.

*Sherman* and *Hitchcock*, for the plaintiff, contended, 1. That the statute of 1702, in force when this fund was established, guarantied an exemption from taxation to all such property as the *Bethany* fund. *Stat.* 433. *tit.* 97. *c.* 1. *s.* 4. (ed. 1808.) The provisions of that statute embrace " lands, tenements, hereditaments and *other estates.*" The latter term is extensive enough to reach every species of property. The previous enumeration of particulars does not restrain the effect of the general clause. The object of the legislature requires a *liberal* construction.

2. That the guaranty thus given was in the nature of a *contract*, which the legislature could not rescind, without the consent of the other contracting party. The legislature have said to corporations and to individuals, if you will give your property for the maintenance of the ministry of the gospel, it shall be forever exempted from taxation. *Dartmouth College* v. *Woodward*, 4 *Wheat.* 518. 663. *Terrett* v. *Taylor*, 9 *Cranch* 43. This law may, indeed, be repealed ; but the repeal will operate only *prospectively*, and will not affect property given under the law before its repeal.

3. That admitting the power of the legislature, still the existing laws do not, by a just construction, subject this property to taxation. In construing a statute, the *object* of the legislature is principally to be regarded. Here, the object was to

subject income, or articles of luxury indicating wealth. This property was neither. It yields no emolument, being dedicated to religious instruction—a mere charity. In 1777, monies at interest were subjected to taxation; but from that time to this a uniform practical construction of the statute has excluded from its operation funds for charitable purposes. Upon the same principle on which funds for the support of the ministry may be taxed, the dwelling-houses connected with gaols may be taxed as "dwelling-houses;" the furniture of the communion table, as "silver plate;" our town clocks, as "clocks;" the funeral hearse, as a "carriage;" and our places of interment, as "lands." Were these ever thought of as subjects of taxation? And yet they are as much within the words of the statute of 1819 regarding taxes, and of the former tax laws, as the property in question.

4. That the general tax laws do not extend to corporations. *The Hartford Fire Insurance Company* v. *Hartford*, 3 *Conn. Rep.* 15 The assessors are to take the lists of "persons in their respective towns" and "non-residents;" but this corporation is neither a person nor a non-resident.

5. That if the society of *Bethany* may be regarded as a person, still as its members, by the constitution and laws of this state, may reside any where, it is without local limits, and consequently could not be taxed by the town of *Woodbridge*. Our ecclesiastical societies, now, have no *inhabitants*. The term is no longer used to designate the persons of whom the society is composed; but they are called "*members*," who, as such, have no residence. When membership may be acquired without residence, the society ceases to have local limits.

6. That the plaintiff's private property was not liable to be taken for the tax; that liability extending to the inhabitants of towns only. At common law, execution must issue against the corporation itself, not against its members. They are not the debtors.

*N. Smith* and *R. I. Ingersoll*, for the defendants, contended, That the statutes concerning taxes of 1819 and 1820, gave the right to tax the funds of a corporation. First, these statutes direct that *all* money at interest shall be taxed. They speak not only of *persons*, but of *owners* of taxable property. *Vid.* Act of 1819, *sect.* 19. 21. 24. Of 1820, *sect.* 1. 8. Secondly, corporations are *persons*. They have been adjudged even to

New-Haven,
July,
1826.

Atwater
v.
Woodbridge.

be *inhabitants* and *occupiers;* and have been taxed as such. *Rex* v. *Gardner, Cowp.* 79. 84. *Com. Dig. tit.* Chimin. B. 3. In the state of *New-York,* it has been decided, that under an act, which speaks only of *persons* liable to be assessed, *corporations* may be taxed. *The Clinton Woolen and Cotton Manufacturing Company* v. *Morse* and *Bennett,* decided *October* term, 1817, cited 15 *Johns. Rep.* 382. Thirdly, the legislature, in the 14th section of the act of 1819, had ecclesiastical funds in view. The *real estate, viz.* " houses, lands or lots with the appurtenances thereof," belonging to any religious society, was expressly exempted from taxation ; but the *personal estate* was not exempted.

2. That no former statute exempted personal property. The statute principally relied on, *viz.* that of 1702, exempted " lands, tenements, hereditaments and *other estates.*" The latter expression is evidently a general term, embracing the particular kinds of estate previously specified. Real estate was the subject ; and the general clause cannot be extended to a new and distinct species of property. It is apparent from the connexion, that personal property was not intended.

3. That the statute of 1702 had no resemblance to a *contract,* but was a *general, public act.* Because the legislature think proper to exempt a particular species of property from taxation, one year, this does not bind them to exempt it forever.

4. That the constitution of this state has not destroyed the local limits of ecclesiastical societies. The mischief complained of, was, that persons moving into any located society, were compelled to become members. To remedy this evil, the constitution authorized persons within the limits of a located society, to separate themselves from it, without uniting with a society of a different denomination ; but the framers of that instrument did not intend to break up any of the located societies. *Bethany* is still in *Woodbridge.*

5. That the property of an individual member of a community, is liable, on execution, for a claim against the community ; and he has a right of indemnity. 1 *Swift's Dig.* 72. 794. This practice is not peculiar to this state : it is equally familiar and well settled, in *Massachusetts.* 9 *Mass. Rep.* 249.

BRAINARD, J. The great question in the case, is, whether this fund was liable to taxation. There are, indeed, other subordinate questions, which may deserve notice.

At what time the first statute in relation to property given for religious and charitable purposes, was passed, I have not been able to ascertain. It must, however, have been previous to the year 1702; for in the revision of the statutes in 1702, page 66. in an act "For securing estates given to charitable uses," we find it enacted, " That all such lands, tenements, hereditaments and other estates, that either formerly have been, or hereafter shall be given and granted, either by the General Assembly of this colony, or by any town, village or particular person or persons, for the maintenance of the ministry of the gospel, in any part of this colony, or schools of learning, or for the relief of poor people, or for any other public or charitable use, shall forever remain and be continued to the use or uses to which such lands, tenements, hereditaments or other estates, have been or shall be given and granted, according to the true intent and meaning of the grantors, and to no other use whatever; and also be exempted out of the general lists of estates, and free from the payment of rates."

And I further find the same section of the statute retained and continued in every subsequent edition and revision of the statutes, without the variation of a word, from that time until the revision of 1821.

It is contended, that the expression "and other estate," is senseless and unmeaning; that at any rate, it cannot introduce a new species of estate—any estate other and different from what had been previously mentioned, *viz* real estate; that of course, money at interest, secured by notes and bonds, for whatever purpose given, was not within the exemption. But I think there is nothing in this objection. Money is estate, and estate other than lands, &c. A different construction would do violence to reason and common sense.

It is objected, on the part of the plaintiff, that even admitting that this fund was not, by the general and ancient statute before referred to, exempted; still the town of *Woodbridge* had no right or authority to assess the society of *Bethany*: for that by the 2nd section of the statute relating to religious societies and congregations (revision of 1821, page 431.) *Bethany*, as a society, had become extinct; that it had lost its identity, for want of essential component parts; that nobody is obliged, for conscience sake, to belong to it; therefore, nobody does belong to it. The statute including the section last referred to, was passed previous to the year 1820. The section is, "Whenever

New-Haven,
July,
1826.

Atwater
v.
Woodbridge.

any person shall desire to join any religious society or congregation, which has been or shall be incorporated by law, or has been, or shall be formed, by voluntary association, he may lodge with the clerk of the same, or if there be no clerk, with any other officer thereof, a written declaration, subscribed by himself, expressing his desire and intention of becoming a member of such society or congregation ; and thereupon he shall become a member thereof, entitled to all the privileges, and liable to all the duties, of a member, unless a majority shall, at their next lawful meeting, manifest their dissent thereto."

The case states, that *Bethany* was a legally organized and constituted ecclesiastical society, by local limits ; and the first section of the statute last referred to, contemplates and admits the existence of such societies, and moreover provides for their continuance. To be sure, this society, like other corporations or bodies, both natural and political, is, as to its members and component parts, constantly liable to changes. It is true, that by the section last referred to, in relation to the liberty of conscience, a man may, very easily, cease to be a member of any particular ecclesiastical society. A man may be born and educated a *Presbyterian,* an *Episcopalian,* or of any other denomination of christians, and, for conscience sake, disclaim the connection. But such a member, when he lodges his conscientious certificate, does not carry with him the pillars of the society, where he was born and educated ; nor of the church where he was baptized. There is, therefore, in my view, no substance in this objection. *Bethany* was a society or corporation, capable of receiving and holding property, and liable to be assessed for it, unless exempted.

Another point is made, on the part of the plaintiff, that his property, as an individual, was not liable to be taken, by distress, for the debt or duty of the society, of which he was a member. Were this the decisive point in the case, it might be of more serious consideration. If we admit, that the society of *Bethany* was a legally organized society, capable of taking and holding property, liable to taxation, and that this assessment was properly laid on that society ; I do not see, but that, according to the principles and practice of cases analogous to this, the distress may be warranted. This practice, with regard to towns, has obtained in *New-England*, so far as I have been able to investigate the subject, from an early period—from its first settlement ; a practise brought by our forefathers from *England*,

which had there obtained in corporations similar to the towns incorporated in *New-England.* And if this be correct as to towns, I see no reason why the same principles and practice should not be applicable to societies. They are communities for different purposes, but, essentially, of the same character. In either case, the individual affected has his remedy; the operation of which, if well applied, will cure the evil. The town or society will be brought to a sense of duty, and make provision for payment and indemnity.

But the great question in the case, is still to be answered. I have already said, that money, notes and bonds drawing interest, are estate—estate other and different from lands, tenements and hereditaments; and I think there can be no question, but that under the protection of the section or paragraph in the revision of 1702, and which was continued without the least alteration until long after the establishment of *Bethany* fund, that fund was exempt from taxation.

The next and remaining questions are, whether this right of exemption, given to the donees and grantees of property under that section, could be taken from them; and if it could, whether it has ever been effected, by any act of legislation?

The statute entitled "an act for the assessment of taxes" provides, "that all monies at interest, secured by notes or bonds of responsible persons, or by mortgages on real estate, shall be set in the list at 6 *per cent.*" The same statute, in the same section, says, that all lands shall be set in the list at 3 *per cent.* of their value, and all silver plate at 6 *per cent.* of its value. These expressions must all have a rational construction, according to the subjects to which they relate. Who would say, that in the expression "silver plate," as there used, was meant to be included silver plate dedicated to the service of the communion? That by the expression "all lands," as there used, are included, lands appropriated to the interment of the dead? And who can say, that under the expression "all monies at interest," are necessarily included monies given under the sanction and protection of an ancient law,—a law which exempted it from taxation,—a law unrepealed, unless by mere implication? I think the fair reading is, all monies at interest shall be set in the list, &c. except such monies as by law are exempted.

In no act of the legislature, do I find the statute of 1702, repealed; certainly, not expressly, and I think not by any fair implication.

The statute of 1821 differs, in point of expression, from the statute in the revision of 1702. It is "All lands, tenements or other estates, that have been, or shall be, given or granted, by the general assembly, or any town, or particular person, for the maintainance of the ministry of the gospel, or schools of learning, or for the relief of the poor, or for any other public and charitable use, shall forever remain and be continued to the uses to which they have been, or shall be, given or granted, according to the true intent and meaning of the grantor, and to no other use whatever." *Stat.* 301. *tit.* 56. *c.* 1. *s.* 3.

It is true, that under this statute, there is no express exemption of property of the description under consideration, from taxation. But here I would apply the same principle, that I have before stated; that this must be taken with the rational proviso, that whatever privileges and exemptions have been, by former laws, granted, and annexed to property of this description, shall still remain.

I cannot, for a moment, believe, that the legislature ever intended to interfere with the rights given and acquired under the first statute. But if they did, I will, with deference, but with boldness, say, they had no constitutional power to effect it.

It appears to me, that property given under the statute, so long as it is applied to the uses designated, must forever retain the rights and privileges attached to it, at the time of the grant : That the government made a contract with all such persons as might be disposed to give their property to these religious purposes and charitable uses, that it should forever be exempted from taxation :—That a right in the grantees, donees, devisees or legatees became vested, which no subsequent legislature could divest. They had a right, at all times, to prescribe the terms, on which any future grants or donation should be made or given; but I think, they have no constitutional right or power, either directly or indirectly, to impair former grants, or to lessen their natural productiveness. Taxation may be a worm at the root, which, in its consequences, may destroy both root and branch.

I would, therefore, advise, that judgment be for the plaintiff, to recover the amount of money paid, with interest and costs.

The other Judges were of the same opinion, except DAG-GETT, J., who gave no opinion, having been of counsel in the cause.

.Judgment for plaintiffs.