### OSBORNE *against* HUMPHREY and another.

In 1742, an ecclesiastical society, to which a tract of land had been previously given for the maintenance of the gospel ministry, in consideration of a gross sum paid by *A.*, leased that land to him and his heirs, for the period of 999 years.  By sundry mesne conveyances, a part of the same land passed to *B.*, who erected buildings thereon, and thereby greatly enhanced its value.  Held, 1. That the land so held by *B.*, was within the provision of the statute of 1702, exempting estates given *in pios usus* from taxation ; 2. that it was immaterial with reference to the operation of this act, whether the original sequestration of the land was before or after its enactment ; 3. that the lease of 1742, though for 999 years, and in consideration of a gross sum, conveyed a less estate than a fee ; 4. that the buildings erected by *B.*, being attached to the land, are to be considered, in this case, as part of the land ; 5. that the clause in the act of 1702, exempting the estates therein mentioned from taxation, was repealed at the revision of the statutes in 1821 ; 6. that such repeal was inoperative as to rights already acquired by virtue of the act, being repugnant to the con-

*Hartford,*
June, 1829.

Sigourney
*v.*
Munn.

*Hartford,*
June, 1829.

Osborne
*v.*
Humphrey.

stitution of the *United States,* inasmuch as it impaired the obligation of a contract; and 7. that the land in question is, consequently, still exempt from taxation.

THIS was an action of trespass *de bonis asportatis;* which came on for trial at *Hartford, February* term, 1829; when a case comprising the following facts, was made and agreed to.

Previous to the year 1742, a large tract of land had been granted to the first ecclesiastical society in the ancient town of *Simsbury,* for the maintenance of the gospel ministry. In that year, this tract, for the consideration of 49*l.* 10*s.* 3*d.*, was demised to *Ezekiel Humphrey* and his heirs, for the period of 999 years. It has since been divided, and is now held by divers persons in severalty. A part of it lying in the present town of *Canton,* has passed, by sundry mesne conveyances, to the plaintiff, who received it from his immediate grantor, under a deed of warranty in fee. Since the demise in 1742, the value of the whole tract has been greatly enhanced, by the erection of dwelling-houses and other buildings thereon, it being now worth 4000 dollars. The value of the plaintiff's part has been proportionably enhanced, by the same means; it being now worth 1450 dollars. The assessors of the town of *Canton* inserted it in his list, on which sundry taxes were granted. For the collection of these taxes, warrants were issued, which, by one of the defendants, under the direction of the other, were levied on the goods of the plaintiff specified in the declaration.

The case was reserved for the advice of this Court.

*Sherman* and *P. Miner,* for the plaintiff, after remarking that the property which was made the subject of taxation in this case, was unquestionably within the terms and the meaning of the statute of 1702, contended, 1. That the lease of 1742 did not deprive this property of the privilege, which it was the object of that statute to secure. This lease gave the lessee a term for years only, the fee being still in the society. 2 *Bla. Comm.* 140. *&. seq.* For the purpose of continuing the privilege given by the statute, surely it is not necessary that the land should always remain in the possession and occupation of the society. The society can ordinarily appropriate the use of the land to its benefit, in no other way than by putting it into the possession and occupation of a tenant; and it makes no difference whether it be by a short or a long lease. The land in question is still leased out for the support of the gospel min-

istry. Why should a portion of the consideration of the lease be paid *annually ?* If this land had been leased for the same term, at the rent of 20 dollars a year, there could have been no question. Now, does it make any difference, whether an annual rent is reserved, or a gross sum be taken in anticipation? Is not the legal effect of the contract, so far as this case is concerned, the same in one case as in the other? Does not the land, in both cases, remain equally to the use of the society?

But if the lease of 1742 were a conveyance in fee, it would make no difference. It is the *land* which is exempted from taxation; and this privilege does not cease or vary, on a change of owners. If the society sell it, they get the benefit intended, in the consideration, which will be increased by the precise value of the exemption. In this way, the land, notwithstanding a thousand alienations, remains, and will *forever remain and be continued* to the use to which it was given.

2. That the privilege of exemption from taxation, given by the statute of 1702, was in the nature of a *contract,* which the legislature could not rescind, without the consent of the other contracting party; and if the omission of the clause declaring the exemption in the revision of 1821, is to be considered as a repeal of that clause, the repeal is unconstitutional with regard to estates given or held under the statute, and, therefore, it is thus far inoperative. This point was fully considered and settled in *Atwater* v. *Woodbridge,* 6 *Conn. Rep.* 223. The legislature have made a grant: the faith of the government is pledged: it cannot be taken back.

*W. W. Ellsworth,* for the defendants, after remarking that every man's property, which falls within the description of taxable property, must bear its proportion of the public burthens, unless specially exempted by the legislature, contended, 1. That for every purpose of taxation, the plaintiff was the entire and exclusive owner of the land assessed and taxed in this case. The grant for 999 years, for a gross sum, vested *the whole beneficial interest* in the grantee; and the equivalent paid became vested in the society. Suppose the society had taken another piece of land in exchange for this, or instead of the money; would not the land so taken be exempt from taxes? May not these funds and sequestrations be put into new investments? May not new stocks be purchased, or gotten by exchange, without a loss of privilege to the fund?

*Hartford,*
*June, 1829.*

Osborne
*v.*
Humphrey.

*Hartford,*
*June, 1829.*

*Osborne*

*v.*

*Humphrey.*

Will not the privilege attach to the new stock or land, while that which is sold loses its privilege; and this because it is sold? If otherwise, it will be a very easy thing to draw from the tax list every acre of land in the state; for a man has only to sell, for full value, for some charitable use, and take back a lease or conveyance for 10,000 years, and he cannot be reached by any tax. An annual income may not be liable to taxation; but if the capital is sold or exchanged, that which is taken, and which constitutes the property of the society, may be exempt, but that which is sold cannot be.

There is no analogy between the disposition of the property made in this case and an annual rent on a lease. The kinds of rent mentioned in the books, are *rent service, rent charge* and *rent seck.* 2 *Bla. Comm.* 41, 2. These rents are all *annual,* and must be. For rent, too, there may be *distress.* The land may be forfeited: an eviction of part of the premises defeats the whole of the rent: it must issue out of the thing granted. The disposition in question, then, was not a *renting* of the land, but a *sale.*

But were this a lease with an annual rent, still it would be taxable as the property of the plaintiff; for an interest for 999 years would then be vested in him; and not less so because he was to make an annual return; for this might be done, and is done in the state of *New York,* where a lease of the fee, an entire interest, is given upon an annual rent. The old notion that a tenant for years has not a vested interest in the freehold, has been exploded for centuries; and he is considered in *England* as having an interest therein as much as if he were a lessee of the fee, or for life. 2 *Bla. Comm.* 144. If he be not the owner of the freehold, he has an interest really of equal value in long leases, and as proper to be taxed, as any other.

2. That that the plaintiff is liable to be taxed to the extent of his *buildings* at least. These are his own, removable at pleasure.

3. That the case of *Atwater* v. *Woodbridge,* the only decision relied upon in opposition to the claim of the defendants, is not decisive here. In the first place, so far as that case turned upon the principle that the act of 1702 protected the fund of the *Bethany* society, because it was created upon the security of that statute, it is inapplicable here; for it does not appear that this sequestration was made after 1702. The town of *Simsbury* was settled in 1647, and incorporated in 1670. Secondly, so far as that case turned upon the principle, that the

assessment does not embrace the species of property in question, it is inapplicable here, because the plaintiff's property is specifically provided for and included in that law.    *Stat.* 446. Thirdly, in the case referred to, the estate of the *society* was taxed, while here it is the estate of an individual, who, however honestly he may hold it, does not hold it exclusively for pious uses.

*Hartford,*
June, 1829.

Osborne
*v.*
Humphrey.

PETERS, J.    The case presents two questions.    1. Was this land exempt from taxation, by the act of 1702 ?    2. Was it made liable, by the act of 1821 ?    By the statute of 1702, it is provided, " That all such lands, tenements and hereditaments, and other estates, that either *formerly have been,* or hereafter shall be given and granted, either by the General Assembly of this colony, or by any town, village or particular person or persons, for the maintenance of the ministry of the gospel, in any part of this colony, or school of learning, or for the relief of poor people, or for any other public and charitable use, shall forever remain and be continued to the use or uses to which such lands, &c. have been or shall be given and granted, according to the true intent and meaning of the grantors, and to no other use whatsoever, and also be exempted out of the general list of estates, and free from the payment of rates." *Stat. p.* 66. revis. 1702.—*p.* 108. revis. 1750.—*p.* 111.—revis. 1784.—*p.* 252, 3. ed. 1796.—*p.* 433. ed. 1808.    The land in question is within the words of the statute, and the appropriation is within the intention of the legislature.    It was given and granted for the maintenance of the ministry of the gospel. This case presents the precise question recently decided, by this Court, in *Atwater* v. *Woodbridge,* 6 *Conn. Rep.* 223. wherein it was unanimously holden, that a fund appropriated to the support of the gospel ministry previous to the act of 1821, was not thereby made liable to taxation.

But the defendants contend, that this grant to *Simsbury* was *before* 1702, and so not within the act.    This, however, is a mere *gratis dictum.*    In the first place, the fact does not appear in the case.    Secondly, the statute is retrospective as well as prospective.    The words are :  " All such estates that either *formerly have been,* or hereafter shall be given and granted," &c.    This is not like other retrospective laws, destroying a vested right, but creating and securing one.

*Hartford,*
*June, 1829.*

Osborne
*v.*
Humphrey.

It is also said, that the title of the plaintiff, and of those under whom he holds, is a sale or grant, and not a lease, because there is no rent reserved. But a lease may be *for money paid*, or rent reserved, and must be of a less term than the lessor has in in the premises. 1 *Swift's Dig.* 131.

Again, it is said, that the plaintiff has a vested *taxable* interest. He certainly has a vested interest ; and a valuable part of it, is, its exemption from taxation ; and this he obtained for a valuable consideration.

It is emphatically asked, why should not the plaintiff be taxed to the extent of his *buildings ?* My answer is, the buildings are attached to the land, which the legislature, having the power and the *right,* have been pleased to exempt from taxation, for the public good, and the special benefit of an institution, which our ancestors considered as the main pillar of civil government.

In the revised statutes of 1821, *tit.* 56. *sec.* 3. (*pp.* 301. 485.) the legislature have been pleased to omit, and, I think, repeal an exemption from taxation of all estates given *in pios usus,* which had been handed down through every revision from 1702 ; and by a subsequent act, (*tit.* 100. *sec.* 2. *p.* 446. revis. 1821.) to direct, that all lands, &c. previously granted for public or pious uses, which had been leased for terms not then expired, at rents merely nominal, should be valued and assessed, &c. These provisions embrace the land in question, and present the main point in this case, *viz.* Have the legislature a constitutional right and power to repeal this exemption, and direct this assessment ? This Court have said No ! And a higher tribunal have said the same.

In *Atwater* v. *Woodbridge,* already cited, which runs on all fours with this case, the only difference being, that the estate in that case was personal and in this real, *Brainard,* J., in giving the unanimous opinion of this Court, thus emphatically speaks : " I cannot, for a moment, believe, that the legislature ever intended to interfere with the rights given and acquired under the first statute. But if they did, I will, with deference, but with boldness, say, they had no constitutional power to affect them. It appears to me, that property given under the statute, so long as it is applied to the uses designated, must forever retain the rights and privileges attached to it, at the time of the grant ; that the government made a contract with all such persons as might be disposed to give their prop-

erty to these religious purposes and charitable uses, that it should forever be exempted from taxation ; and that a right in the grantees, donees, devisees or legatees became vested, which no subsequent legislature could divest."

In 1812, a similar case, upon similar principles, was decided, by the supreme court of the *United States.* In 1758, the legislature of *New-Jersey* and the *Delaware Indians* agreed to exchange lands. The *Indians* were to cede all their lands to the province ; and the legislature were to purchase and cede to the *Indians* other lands, and by statute declared, that the lands so purchased and ceded to the *Indians* should not thereafter be subject to taxation. In virtue of this act, the convention with the *Indians* was executed. In 1801, the *Indians* obtained an act of the legislature authorizing a sale of their lands ; and in 1803, the commissioner under the act conveyed the lands to the plaintiffs. In 1804, the legislature repealed that part of the act of 1758, which exempted the lands from taxation. The lands were then assessed, and the taxes demanded ; for which an action was brought ; and the highest court in the state decided, that the repealing act was valid, and the lands liable to taxation. This decision, on a writ of error in the supreme court of the *United States,* was reversed. In delivering their unanimous opinion, *Marshall,* Ch. J., said : " The question is narrowed to the enquiry, whether in the case stated, a contract existed, and whether that contract is violated, by the act of 1804. Every requisite to the formation of a contract is found in the proceedings between the colony of *New-Jersey* and the *Indians.* The subject was a a purchase, on the part of the government, of extensive claims of the *Indians,* the extinguishment of which would quiet the title to a large portion of the province. A proposition to this effect is made ; the terms stipulated ; the consideration agreed upon, which is a tract of land *with the privilege of exemption from taxation ;* and then, in consideration of the arrangement previously made, one of which this act of Assembly is stated to be, the *Indians* execute their deed of cession. This is certainly a contract. The privilege, though for the benefit of the *Indians,* is annexed, by the terms which create it, *to the land itself,* not to their persons. It is for their advantage that it should be annexed to the land, because, in the event of a sale, on which alone the question could become material, the value would be enhanced by it."—" The land has been sold with the

*Hartford,*
*June, 1829.*

*Osborne*
*v.*
*Humphrey.*

assent of the state, with all its privileges and immunities.   The purchaser succeeds, with the assent of the state, to all the rights of the *Indians.*   He stands, with respect to this land, in their place, and claims the benefit of their contract.   This contract is certainly impaired, by a law, which would annul this essential part of it."   In formally pronouncing judgment, the Court declare, that the repealing act " is repugnant to the constitution of the *United States,* in as much as it impairs the obligation of a contract, and is, on that account, void." *New-Jersey* v. *Wilson, 7 Cranch* 164.

In these opinions I entirely concur.   The cases cannot be distinguished from the case before us.   I therefore advise, that judgment be rendered for the plaintiff.

HOSMER, Ch. J. and BISSELL, J., were of the same opinion.

DAGGETT, J. conceiving himself interested in the question, and WILLIAMS, J. having been of counsel in the cause, gave no opinion.

Judgment to be given for plaintiff.