HARVARD LAW LIBRARY

*New-Haven,*
July, 1835.

Parker
*v.*
Redfield.

## PARKER *against* REDFIELD.

In 1765, *A*, for the consideration of 271*l.* 5*s.* conveyed to *Trinity Church*, an incorporated ecclesiastical society, a parcel of land, *habendum* " to the grantees and their successors and assigns forever, for the support and maintenance of said church." The grantees immediately went into possession of the premises uuder such deed; and have ever since applied the income thereof, for the support and maintenance of said church. Having divided the premises into building lots, they leased them to different individuals, for different terms : and the lessees erected buildings thereon and paid the taxes on such buildings ; but no part of the land has, since the deed of 1765, been taxed. In 1832, the society leased one of such lots to *B*, for the term of seven years, with liberty to erect thereon any suitable dwelling-house or other tenement; *B*, at the same time, covenanting to pay a certain annual rent, and also pay all taxes that might be laid or charged thereon, during said term. In 1833, a house standing on such lot, erected by a former lessee, and then owned by *B*, was assessed as his property, and he was compelled to pay the tax. In an action for money had and received, brought by *B*, against the collector, it was held, that the land, by the deed of *A*, in 1765, was conveyed to charitable or pious uses, within the meaning of the act of 1702; but 2. that by the terms of the agreement between the society and *B*, their lessee, the house was not a part of the land, there being an ownership in the one distinct from that in the other ; and consequently, that the house was not exempted from taxation.

THIS was an action of *indebitatus assumpsit* for money had and received.

On the 31st of *October*, 1765, *Enos Alling*, by deed of that date, conveyed to the ecclesiastical society, then and ever since incorporated and known, by the name of the society of *Trinity Church in New-Haven*, a tract or parcel of land in *New-Haven*, upon the corner of *Chapel* and *Church* streets. The material parts of the deed, were thus expressed : " For the consideration of 271*l.* 5*s.* lawful money, received, to my full satisfaction, of *Timothy Bonticou* and *Isaac Doolittle*, church wardens, and *Christopher Kilby* and *Stephen Mansfield*, vestry-men of *Trinity Church* in *New-Haven*, and the rest of the members of the said *Episcopal Church*, do give, grant, sell and confirm unto the said *Timothy Bonticou, Isaac Doolittle* and the rest of the professors of the *Church of England*, and members of said *Trinity Church*, for the time being, and to their successors, a certain piece or parcel of land"— [describing the premises,] " *To have and to hold* the said bargained and granted premises, with all the appurtenances, unto them

*New-Haven,*
*July,* 1835.

Parker
*v.*
Redfield.

the said grantees, and their successors and assigns, forever, to their own proper use, for the support and maintenance of said church." The premises had been, on the 12th of *September,* 1765, for the consideration of 271*l.* 5*s.,* duly conveyed to said *Alling,* by *Sarah Umberfield,* in fee simple. The society, immediately after the execution of *Alling's* deed to them, went into the possession of the premises, and have ever since held them, and applied the rents and income thereof, for the support and maintenance of said church. The society afterwards divided the premises into building lots of convenient size, and leased them to different individuals, for different terms of time. The buildings, from time to time erected and owned by the lessees of the several lots and their assigns, have always been put into the list, and the taxes, from year to year, paid thereon, by the owners thereof respectively ; but no part of the land on which such buildings have been erected, has, ever since the date of *Alling's* deed, been put into the list, nor have there ever been any taxes paid thereon.

On the 1st of *May,* 1832, the society, by their lease of indenture of that date, demised to the plaintiff, with one *Sally Keefe,* one of said lots of ground, on the following terms and conditions therein mentioned : " *To have and to hold,* use, occupy and enjoy, the said granted and letten premises, from and after the 1st day of *May,* 1833, for and during the term of seven years, then next coming, with free liberty to erect and build thereon any suitable dwelling-house or other tenement, and appurtenances to them; the said lessees, their heirs, executors, administrators and assigns, during all which term, shall and may quietly and peaceably use, occupy and enjoy the said letten premises, without disturbance from any person or persons whatsoever, subject only to the covenants on the part of said lessees. And the said lessees, for themselves, their heirs, executors, administrators and assigns, do jointly and severally covenant and engage to and with the said wardens and their successors, that the said lessees, their heirs, &c. shall and will pay to said wardens and their successors, as a rent for the said letten premises, annually and every year, the sum of 140 dollars, in gold or silver, to be paid on or before the first day of *May* in each year, during the term aforesaid ; and also pay and answer all and any taxes that may be laid and charged thereon during said term." At the execution of this lease, the plaintiff owned and

New-Haven,
July, 1835.

Parker
v.
Redfield.

possessed a dwelling-house, previously erected, by a former lessee of the lot, from whom the title to such house was derived. In the year 1833, the assessors of the town of *New-Haven* inserted said house in the list of the plaintiff, on which sundry town, state and city taxes were, in the same year, laid ; for the collection of which a warrant was issued, signed by proper authority, and delivered to the defendant to collect them. The defendant, with such warrant, demanded of the plaintiff payment of said taxes, and obliged him to pay them, amounting to 2 dollars, 97 cents.

To try the question whether the house was taxable, in this manner, the present suit was brought ; and the questions arising in the case, were, by consent of parties, reserved for the advice of this Court.

*Kimberly,* for the plaintiff, contended, 1. That the land upon which the house in question stands, is exempt from taxation under and by virtue of the act of 1702.

First, the grant in this case is within the meaning of that act. The terms of the deed " for the support and maintenance of the church," (an ecclesiastical society) are equivalent to the expression in the act referred to—" for the maintenance of the ministry of the gospel." It is for the public worship of God ; the only purpose for which an ecclesiastical society is formed and by law incorporated. So it is " for a public and charitable use."

Secondly, the provisions of this act were not expressly repealed, at the revision of the statutes in 1821 ; but were substantially reenacted and confirmed. See *tit.* Lands. *c.* 1. *s.* 3. *p.* 801. *tit.* Taxes. *c.* 1. s. 2. *p.* 446.

Thirdly, the general confirming act of 1821 expressly saves all vested rights. *Stat.* 485.

Fourthly, the legislature had not the constitutional right to repeal the exemption. *Atwater* v. *Woodbridge,* 6 *Conn. Rep.* 223. *Osborne* v. *Humphrey* & al. 7 *Conn. Rep.* 335. The State of *New-Jersey* v. *Wilson,* 7 *Cranch* 164.

Fifthly, the provision in the lease that the lessees shall pay all taxes which may be imposed, has no influence upon the question.

Sixthly, That the society paid a valuable consideration for the land, does not vary the rights of the parties. It does not,

New-Haven,
July, 1835.

Parker
v.
Redfield.

indeed, appear, that a *full* consideration in money was paid. But, admitting it to be so, the case is still within the words of the act—" given or *granted.*" It is also within the intention of the legislature and the spirit of the act. The only enquiry is, for what purpose do the grantees hold it, and to what uses must they appropriate it? See the act of 1702 in *edit.* of 1808. *p.* 433. Act of 1819, *tit.* Taxes.

2. That the house standing on the land, is also exempt. In the first place, if the house were owned and occupied by the society, there could be no doubt: the land would otherwise be of no use to the society. *Williams* v. *Pritchard,* 4 *Term Rep.* 2. *Eddington* v. *Borman,* 4 *Term Rep.* 4.

Secondly, the privilege is annexed to the land itself; of course, the lessee or assignee succeeds to all the privileges of the grantee. *The State of New-Jersey* v. *Wilson,* 7 *Cranch* 164. *Osborne* v. *Humphrey* & al. 7 *Conn. Rep.* 335.

Thirdly, the statute of 1821 provides for the assessment of the land and house together, and not otherwise. *Stat.* 446.

Fourthly, it is of no importance in the case, that the lessees have in fact paid taxes on the buildings. This has no bearing on the *right* to tax them. *Williams* v. *Pritchard,* 4 *Term Rep.* 2. *Eddington* v. *Borman,* 4 *Term Rep.* 4.

Nor fifthly, is it of any importance, that by the condition of the lease, the tenant may remove the buildings, at the expiration of the lease; for so may the tenant always do, where the erection has been made with the consent of the landlord, although not provided for in the lease.

*Baldwin* and *Mix,* for the defendant, remarked *in limine,* that it was unnecessary to discuss the question how far a *general law,* like that of 1702, can be regarded as on the footing of a contract of perpetual obligation, in reference to cases to which it applies; or how far one legislature can, by a *general law,* impair or prevent the future exercise of the *taxing power* in regard to *public* corporations, like ecclesiastical societies. In *The Providence Bank* v. *Billings* & al. 4 *Pet.* 514. Ch. J. *Marshall* declared, that the relinquishment of a power of such vital importance, was, in no case, to be *presumed,* though he would not say, that a consideration sufficiently valuable might not exist to induce a partial release of it. The case of *New-*

*Jersey* v. *Wilson,* 7 *Cranch* 164. was a special contract or a *treaty of exchange.* They then contended,

1. That the law of 1702 never applied to this land. The language of the statute indicates, that it was intended to apply to estates given as donations to pious uses. To encourage such gifts it provided, that they should forever remain according to the *true intent* of the grantor. 6 *Conn. Rep.* 230. If applied to deeds of bargain and sale upon valuable consideration, granting lands to the use of the *grantees* and *assigns,* it would, by rendering them inalienable, be contrary to the very words, as well as the intent of the grantor. It was intended to apply to cases similar to those in which a right of visitation is given to the founder, by whom certain corporations are *endowed ;*—not to the case of a *vendor.* The expression " for the support and maintenance of said church," which follows the *habendum* to the grantees, their successors and assigns, forever, to their own proper use," does not constitute a condition. *Co. Litt.* 204. The land, therefore, being conveyed in fee simple, for a valuable consideration, was alienable, by the society, unless the statute of 1702 renders it *inalienable,* in counteraction of the declared intent of the bargainor. If not inalienable, it was not free from taxation, by the terms of the statute.

2. That if the land was exempt, buildings so erected as not to become part of the land, but which have a distinct ownership, are neither within the reason nor the letter of the exemption. Buildings erected by the society, or by a lessee having no clause in his lease securing to him the ownership of them, would become part of the land, as was the case in *Osborne* v. *Humphrey* & al. 7 *Conn. Rep.* 335. The buildings were owned by the society, who owned the fee of the land. But here, the case finds, that the building belonged to the plaintiff. He bought it of the former owner ; and the building alone has been taxed.

When this house was erected, house lots were not taxable, whoever owned them. The tax was assessed by the number of *fire places.* It was, of course, paid by the owner of the house, and not of the land. This house has always been taxed ; and the plaintiff has paid no consideration for an exemption.

3. That the exemption in the statute of 1702, if applicable to this land, has been waived, by the only party in whose fa-

vour it was granted, long before the plaintiff became their lessee ; or rather, it was never accepted, by the society, during the existence of the law.   If it is not now taxable, it is because the repeal of the law of 1702 *impairs the obligation of a contract.*   With whom was that contract ?   Who has a right to complain of its violation ?   Not the plaintiff ; for he had no interest at the time of the repeal.   It must be the society, if any one.   See 6 *Conn. Rep.* 229.   But they have never claimed to be parties to any such contract ; or complained of its violation ; or leased their land as tax free ; or received any consideration for an exemption.   Any franchise or privilege granted to a corporation, or to an individual, may be rejected by them or him, or surrendered or abandoned.

BISSELL, J.   This is an action for money had and received ; and the question raised upon the case stated, and brought here for our advice, is, whether the dwelling-house of the plaintiff is, by law, subject to taxation.

Two questions have been discussed at the bar :  1. Whether the lands, upon which the house stands, are within the provisions of the act of 1702, and so not liable to be taxed ?  and if they are not so liable, 2. Whether the dwelling-house is also exempted ?

1. It has been contended, that admitting the grant of 1765 to have been within the provisions of the act of 1702, the land is not therefore exempted, inasmuch as that statute was repealed in 1821.

This point has been so recently and so fully considered in the cases of *Atwater* v. *Woodbridge*, 6 *Conn. Rep.* 233. and *Osborne* v. *Humphrey*, 7 *Conn. Rep.* 335. that it ought not to be drawn again into discussion.   Were this now an open question, we might well doubt, whether it be in the power of one legislature, by a general law, to tie up the hands of succeeding legislatures ; and whether a statute, exempting a particular species of property from taxation, is in the nature of a contract, of perpetual obligation.   But these decisions are imperative upon us ; and we yield to their authority.

Were, then the lands in question, conveyed to charitable or pious uses, within the meaning of the act of 1702 ?   We are all of opinion that they were so granted, and are thus within the provisions of that statute.

*New-Haven,*
July, 1835.

Parker
*v.*
Redfield.

New-Haven,
July, 1835.

Parker
v.
Redfield.

But the view that is taken of the case, by a majority of the Court, renders it unnecessary to decide that point :—Because, admitting that the lands are exempted, by virtue of that act, a majority of us are of opinion, upon the facts stated in the case, that the dwelling-house is not thus exempted.

This opinion proceeds upon the ground, that, by the terms of the agreement between the *Episcopal* society and their lessees, the buildings erected upon the land, are not a part of the land ; but that there is an ownership in the buildings, separate and distinct from the ownership in the land.

It is readily conceded, that had the *Episcopal* society improved the lands granted to them, by erecting buildings thereon, or in any other manner, the improvements so put on, would not, either in their hands, or in the hands of their lessees, have been liable to taxation.   They would have constituted *a part of the land ;* and would, therefore, have been exempted, within the provisions of the statute.

So al-o, had they leased the lands for a term of 999 years, and buildings had been erected thereon, by their lessees, the case would have fallen within the principle of *Osborne* v. *Humphrey ;* and the buildings, as well as the land, would have been exempted ; and for the same reason, *viz. that they were a part of the land.*

This was the ground of the decision in that case, so far, at least, as the buildings were concerned.   But, it is apprehended, that the case under consideration, differs materially from that ; and that the two cases are clearly distinguishable in principle.

Here, by the agreement between the parties, the buildings are not considered as a part of the land, or as belonging to it, The society derive their revenue from the ground rent alone. They permit their lessees to put on what buildings they please ; and by the terms of the lease, they have the power of removing them at the end of the term.   Thus, an interest in the buildings is created entirely distinct from an interest in the lands. The title to the one remains in the society, while the ownership of the other is vested in their lessees.  It is, indeed, said, that the case is not varied, by that clause in the lease, which gives to the tenant the power of removing the buildings at the end of the term ; for that he would have had such power, by the mere operation of law.

*New-Haven,*
July, 1835.
———
Parker
*v.*
Redfield.

If by this, nothing more is meant, than that a license to erect buildings implies, in itself, the power of removing them, the position is, perhaps, correct. *Prince* v. *Case,* 10 *Conn. Rep.* 375. And the same result is obtained, *viz.* that the building in question is personal property, and is to be treated as such, by the express agreement of the parties.

But, if by this, it be intended, that buildings erected by a lessee, on the land of the lessor, without license, are personal property, removeable at the pleasure of the tenant, the position may well be questioned. *Elwes* v. *Maw,* 3 *East,* 38.

The lease before us gives a license to the tenant, to erect whatever buildings he pleases, and also the power of removing them. The buildings erected in pursuance of the license, are treated as personal property, and are placed as completely under the controul of the lessee, as any other personal property which he might put upon the demised premises.

In this view of the case, it is difficult to see why this building, any more than other personal estate of the lessee, should be exempted from taxation. And it is equally difficult to see what contract exists, the obligation of which is impaired, by taxing this property. It is in vain to say, that any contract with the *Episcopal* society is thus either violated or impaired. The contract between them and the government was, that *the land,* granted by the conveyance of 1765, should be forever exempted from taxation. And it has been exempted. Does this exemption extend to personal property, placed upon the premises by another; which the society do not own, from which they derive no rent, and over which they have no controul? Has the plaintiff any ground of complaint? He derives no title to this building from the *Episcopal* society. As to that, he is not their lessee. The case finds, that he is the owner, having purchased it of a former owner; and that it has always been subject to taxation.

Unless, therefore, there be some inflexible rule of law, requiring that buildings erected upon the land of another, under whatever circumstances, and whatever may be the stipulations of the parties, shall be considered as a part of the land itself; it is believed, that the taxes in question were well laid; and that judgment must be entered for the defendant.

Is there any such unbending rule? This will hardly be contended, when it is recollected, that erections made by the

HARVARD LAW LIBRARY

*New-Haven,*
*July, 1835.*

*Parker*
*v.*
*Redfield.*

lessee for the benefit of his trade or manufacture, and which enable him to carry it on with more advantage, have, by modern decisions, been considered as personal chattels, removeable at the pleasure of the tenant; and that without any agreement between him and his landlord. *Dean* v. *Allalley,* 3 *Esp.* 11. *Penton* v. *Robart,* 2 *East,* 88. *Elwes* v. *Maw,* 3 *East,* 38.

The case of *Osborne* v. *Humphrey,* already cited, has been pressed upon us, as decisive of the present. It has already been remarked, that that case is believed to be clearly distinguishable from this, in principle. At the same time, it should be observed, that the great and leading question in that case was, whether *the land* was exempt from taxation, in view of the acts of 1702 and 1821.

A mere passing remark was made, by the defendant's counsel, in reference to the buildings; and the subject is as briefly disposed of, in the reported opinion of the court. It is said, they were not taxable, because they were attached to the land. They were erected, evidently, with a view to their permanent continuance; and there is no intimation of an ownership in them separate and distinct from the ownership in the land. They were, in fact, a part of the land, as much as fences or any other improvements, which might have been put upon it, by the tenant. But such, we have seen, is not the case here. It is believed, that this case is not governed by that; and that the decision now made, does not conflict with the decision in that case. We would not deny its authority. But it may be remarked, that no rule of public policy requires, that the principles of that, and the other cases on this subject, should be extended.

The cases of *Williams* v. *Pritchard,* 4 *Term Rep.* 2. and *Eddington* v. *Borman,* 4 *Term Rep.* 4. have also been relied on, by the plaintiff's counsel.

In these cases, the plaintiff's houses, upon which the assessments were laid, were erected on grounds which were formerly parts of the soil and bed of the river *Thames;* and which had been inclosed and embanked, by the proprietors of the adjoining wharves, in pursuance of the stat. 7 *Geo.* 3. *c.* 37. by which the lands so enclosed and embanked were declared "*free from all taxes and assessments whatsoever.*" In the former case, the assessment was laid on the house occupied by the plaintiff;

and it was held, that it was not liable to taxation. The case does not state, that the plaintiff either erected or owned the house : on the contrary, it is clearly inferable from the case, that the house was owned by the owner of the land ; for it is stated, that the plaintiff occupied it as tenant only. This case governed that of *Eddington* v. *Borman*, which immediately followed.

*New-Haven,*
*July, 1835.*

Parker
*v.*
Redfield.

Neither of these cases, therefore, has a direct bearing on the question now before us.

From the best consideration we have been enabled to bestow on the case, a majority of the court have come to the conclusion, that the plaintiff's house, under all the circumstances, is not exempted from taxation. And the superior court is to be advised, that judgment be rendered in favour of the defendant.

The other Judges concurred in this opinion, except WILLIAMS, Ch. J., who dissented, on the authority of *Atwater* v. *Woodbridge,* and *Osborne* v. *Humphrey* & al., thinking that this case could not be distinguished in principle from those cases, especially the latter.

Judgment for defendant.