## UNIVERSITY OF HARTFORD *v.* CITY OF HARTFORD (2401)

TESTO, HULL and BORDEN, Js.

Argued April 4—decision released June 19, 1984

*Edward F. Hennessey,* for the appellant (plaintiff).

*Richard M. Cosgrove,* deputy corporation counsel, with whom, on the brief, was *Richard H. Goldstein,* corporation counsel, for the appellee (defendant).

TESTO, J. This appeal[1] arises from the dismissal by the Superior Court of the plaintiff's tax appeal from

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

the denial of tax exempt status with respect to certain property in Hartford by the board of tax review of the city of Hartford. In its complaint, the plaintiff requested partial tax exempt status on the tax list for 1980 for a building it leases at 967-983 Asylum Avenue in Hartford, and in the amended complaint for the partial exemption on the list for 1981. The question to be determined is whether the plaintiff's leasehold interest qualifies for tax exemption under General Statutes § 12-81 (7).[2]

The facts are not in dispute. The subject property was acquired on June 24, 1964, by the lessor, Hartford National Bank and Trust Company, as trustee under a will. On that date, by written lease, it leased the land with a building on it to three individuals. A notice of the lease was recorded on the land records of the city of Hartford on February 17, 1965. The lease period extended from May 1, 1964, to April 30, 2027, at specified rents. After April 30, 1975, the rent was to be an amount mutually agreeable to the lessor and lessee or as fixed by arbitration. The lessees agreed to demol-

---

[2] General Statutes § 12-81 (7), in relevant part, exempts from taxation the following property: "Subject to the provisions of section 12-87 and 12-88, the real property of, or held in trust for, a corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation, provided (a) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and provided (b) in 1965, and quadrennially thereafter, a statement on forms prepared by the secretary of the office of policy and management shall be filed on or before the last day required by law for the filing of assessment returns with the local board of assessors of any town, consolidated town and city or consolidated town and borough, in which any of its property claimed to be exempt is situated."

General Statutes § 12-87 provides: "During any year for which a report is not required by subdivisions (7), (10) and (11) of section 12-81, a report shall be filed during the time prescribed by law for the filing of assessment lists next succeeding the acquiring of property not theretofore made exempt

ish the building presently on the land and to erect another building subject to the lessor's approval. The lessees assumed responsibility for repairs and maintenance of the new building and could make structural additions or alterations, subject to the lessor's reasonable consent. The lessees also agreed to insure the property against all claims, to indemnify the lessor and to pay, as additional rent, all taxes assessed against the land and buildings. The lessees, however, could protest taxes in the name of the lessor and retain any refund obtained. They could assign the lease without the consent of or liability to the lessor, or mortgage the leasehold for future construction.

The lessees' interest was assigned during the years between 1964 and 1979. On December 14, 1979, that assignee made a valid assignment of the lease to the plaintiff for the unexpired term of forty-eight years. At that time, there was a building on the land containing 157 units, mostly residential but some commercial. The plaintiff acquired the lease for additional student housing and expended over $500,000 to refurbish the building for that purpose. The leases of existing tenants

by said subdivisions. Property otherwise exempt under any of said subdivisions and this section shall be subject to taxation until the requirements of said subdivisions and of this section have been complied with.''

General Statutes § 12-88 provides: ''Real property belonging to, or held in trust for, any organization mentioned in subdivision (7), (10), (11), (13), (14), (15), (16) or (18) of section 12-81, which real property is so held for one or more of the purposes stated in the applicable subdivision, and from which real property no rents, profits or income are derived, shall be exempt from taxation though not in actual use therefor by reason of the absence of suitable buildings and improvements thereon, if the construction of such buildings or improvements is in progress. The real property belonging to, or held in trust for, any such organization, not used exclusively for carrying out one or more of such purposes but leased, rented or otherwise used for other purposes, shall not be exempt. If a portion only of any lot or building belonging to, or held in trust for, any such organization is used exclusively for carrying out one or more of such purposes, such lot or building shall be so exempt only to the extent of the portion so used and the remaining portion shall be subject to taxation.''

were not renewed as their terms expired except in the case of elderly and handicapped tenants, who were allowed to continue occupancy indefinitely. By October 1, 1980, the building was in use as a dormitory. Based upon square footage, 66.2 percent was for student housing and 33.8 percent for nonstudent use. This latter figure included all commercial tenants, all elderly and handicapped tenants and all persons associated with the plaintiff who serviced the student housing. From October 1, 1980, to October 1, 1981, the percentage of student occupancy increased. The plaintiff calculated the charge to students for on-campus housing on a maintenance and upkeep basis so that the amounts paid by the students produced no profit to the plaintiff. Depreciation was not included and actual costs were not met by the students' charges. The charges made to students occupying the leased property in issue were calculated on the same basis as on-campus housing plus added costs for security personnel and transportation to and from the campus. Rents from the commerical unit produced a fair profit, but rents from the elderly and handicapped operated at a loss. Overall revenue from the building produced a loss, aside from any allowance for depreciation, in the amount of $48,000 in 1980 and $351,000 in 1981.

The land and building has always been assessed to the Hartford National Bank and Trust Company, as trustee and record owner of the fee. On October 1, 1980, and October 1, 1981, the defendant's assessors assessed the land for $292,510 and the building for $996,310. The assessments were based on 70 percent of the market value of $417,870 for the land and $1,423,300 for the building. The exemption claimed by the plaintiff in each year has been 66.2 percent of the $996,310 assessed against the building amounting to $659,557. The plaintiff has conceded liability under the terms of

the lease for the balance of $336,753 assessed against the building and $292,510 against the land.

On appeal, the plaintiff claims that the trial court erred (1) in concluding that the property interest held by the plaintiff did not constitute "real property" within the meaning of General Statutes § 12-81 (7);[3] and, alternatively, (2) in concluding that, notwithstanding General Statutes § 12-64[4] which includes all air right easements within the definition of taxable interests in

---

[3] See footnote 2, supra.

[4] General Statutes § 12-64 provides in relevant part: "All the following-mentioned property, not exempted, shall be set in the list of the town where it is situated and, except as otherwise provided by law, shall be liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred per cent of such valuation, to be determined by the assessors: Dwelling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, all other buildings, house lots, all other building lots, agricultural lands, shellfish lands, all other lands, quarries, mines, ore beds, fisheries, property in fish pounds, machinery and easements to use air space whether or not contiguous to the surface of the ground. An easement to use air space shall be an interest in real estate and may be assessed separately from the surface of the ground below it. Any interest in real estate shall be set by the assessors in the list of the person in whose name the title to such interest stands on the land records and, if the interest in real estate consists of an easement to use air space, whether or not contiguous to the surface of the ground, which easement is in the form of a lease for a period of not less than fifty years, which lease is recorded in the land records of the town and provides that the lessee shall pay all taxes, said interest shall be deemed to be a separate parcel and shall be separately assessed in the name of the lessee, and if the interest in real estate consists of a lease of land used for residential purposes which allows the lessee to remove any or all of the structures, buildings or other improvements on said land erected or owned by the lessee, which lease is recorded in the land records of the town and provides that the lessee shall pay all taxes with respect to such structures, buildings or other improvements, said interest shall be deemed to be a separate parcel and said structures, buildings or other improvements shall be separately assessed in the name of the lessee, provided such separate assessment shall not alter or limit in any way the enforcement of a lien on such real estate in accordance with chapter 205, for taxes with respect to such real estate including said land, structures, buildings or other improvements."

real estate, the statute did not apply to the property interest held by the plaintiff within the meaning of § 12-81 (7).

A trial court's conclusions are tested by its findings, and a conclusion cannot stand if it is legally or logically inconsistent with the facts found or if it involves some erroneous rule of law applicable to the case. *Red Top, Inc.* v. *Board of Tax Review,* 181 Conn. 343, 347, 435 A.2d 364 (1980); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Hallmark of Farmington* v. *Roy,* 1 Conn. App. 278, 280, 471 A.2d 651 (1984). General Statutes § 12-81 (7) exempts from taxation, subject to the provisions of § 12-88, all real property of, or held in trust for, a corporation organized exclusively and used exclusively for educational purposes. *Red Top, Inc.* v. *Board of Tax Review,* supra, 350; *New Canaan Country School, Inc.* v. *New Canaan,* 138 Conn. 347, 349, 84 A.2d 691 (1951); *Connecticut Junior Republic Assn., Inc.* v. *Litchfield,* 119 Conn. 106, 108, 115, 174 A. 304 (1934). Section 12-88 requires that the real property mentioned in subdivision (7) of § 12-81 belong to or be held in trust for such an organization. *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 372–73, 279 A.2d 561 (1971).

The general rule of construction in taxation cases is that provisions granting an exemption from a tax are to be construed strictly against the party claiming the exemption. *Sachem's Head Assn.* v. *Board of Tax Review,* 190 Conn. 627, 629, 461 A.2d 995 (1983); *Oxford* v. *Beacon Falls,* 183 Conn. 345, 346, 439 A.2d 348 (1981). As far as educational institutions are concerned, however, § 12-81 (7) "does not grant an exemption in the technical sense." Rather, it merely states a rule of nontaxability, and consequently does not fall within the general rule. *Hartford Hospital* v. *Hartford,* supra, 374; *Arnold College* v. *Milford,* 144 Conn. 206,

210, 128 A.2d 537 (1957); *Yale University* v. *New Haven,* 71 Conn. 316, 329–33, 42 A. 87 (1899).

In the present case, we need not determine whether the building in question is used exclusively for educational purposes, if the plaintiff's interest therein does not constitute "real property" within §§ 12-81 (7) and 12-88. In interpreting statutes such as these which are clear and unambiguous, it is the duty of the reviewing court to apply the legislature's directive since "where the wording is plain, courts will not speculate as to any supposed intention because the question before a court then is not what the legislature actually intended but what intention it expressed by the words that it used." *P. X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 159, 454 A.2d 1258 (1983), quoting *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980); *In re Petition of State's Attorney, Cook County, Illinois,* 179 Conn. 102, 106–107, 425 A.2d 588 (1979); *Phipps* v. *Niejadlik,* 175 Conn. 424, 434, 399 A.2d 1256 (1978). For the plaintiff to qualify for a 66.2 percent tax exemption, its interest under the lease must be considered ownership of real property or be held in trust for it.

It is settled law in this state that real property taxes are normally assessed against the owner. *Lerner Shops of Connecticut, Inc.* v. *Waterbury,* 151 Conn. 79, 82–84, 193 A.2d 472 (1963); *Montgomery* v. *Branford,* 107 Conn. 697, 701, 142 A. 574 (1928). Leased property is assessed against the lessor as the owner of the freehold estate; see *Montgomery* v. *Branford,* supra; who by statute is obligated to pay the tax even though the lessee, as herein, agreed to pay the taxes. *Lerner Shops of Connecticut, Inc.* v. *Waterbury,* supra.

There are, however, certain circumstances under which the lessee has been treated as the fee owner for tax purposes. See *Russell* v. *New Haven,* 51 Conn. 259

(1883); *Parker* v. *Redfield,* 10 Conn. 490 (1835); see also *Osborne* v. *Humphrey,* 7 Conn. 335 (1829) (building used for gospel ministry leased for 999 years). For example, in *Parker,* it was held that buildings erected by the lessee under an agreement that they may be removed at the end of the lease term, were deemed to be the property of the lessee and taxable. *Parker* v. *Redfield,* supra, 495–97. Likewise, our Supreme Court concluded in *Russell* that the ownership of the building was in the lessee, because the lease agreement provided for the purchase of the building by the lessor and was drawn up in such a manner as to exclude the idea of ownership in the lessor. *Russell* v. *New Haven,* supra, 261–62. The plaintiff's lease agreement in this case does not fall within these situations. Its lease clearly indicates that the building to be erected would be subject to a substantial measure of supervision and control by the lessor, not only in its design and construction but also in its subsequent operation. In addition, the lease is for forty-eight years and does not provide for either the removal of the buildings or for their purchase by the lessor at the end of the lease term. We cannot, therefore, say that the trial court's conclusion that the plaintiff's leasehold interest is an insufficient indicium of ownership to qualify as "real property" within the definition of the tax statutes was clearly erroneous.

Alternatively, the plaintiff maintains that even if the interest created by this lease would not be deemed "real property" within the meaning of § 12-81 (7), the 1967 amendment to General Statutes § 12-64[5] which included

---

[5] The 1967 amendments to General Statutes § 12-64 added to the third sentence "and, if the interest in real estate consists of an easement to use air space, whether or not contiguous to the surface of the ground, which easement is in the form of a lease for a period of not less than fifty years, which lease is recorded in the land records of the town and provides that the lessee shall pay all taxes, said interest shall be deemed to be a separate parcel and shall be separately assessed in the name of the lessee." Public Acts 1967, No. 829.

air right easements within the definition of taxable interests in real estate applied to the property interest held by the plaintiff and made such interest "real property" within the meaning of § 12-81 (7).

The introductory language of § 12-64 states: "All of the following-mentioned property, not exempted, shall be set in the list of the town where it is situated and . . . shall be liable to taxation . . . ." "The subsequent enumeration recites only specific tangible property (buildings, lots, etc.) with the otherwise single exception of 'easements to use air space.' " *Hartford Electric Light Co.* v. *Wethersfield,* 165 Conn. 211, 218, 332 A.2d 83 (1973). This language gives the assessors the authority to impose a tax on any of the enumerated items situated in their respective towns. Id., 218–19. The purpose behind defining an easement to use air space as an interest in real estate was to "allow a municipality to tax air rights above its property, railroad tracks and streets." Id., 223. The plaintiff's leasehold interest in privately held land and the building thereon is not an easement to use air space within the purview of General Statutes § 12-64.

There is no error.

In this opinion the other judges concurred.