## HART *against* the town of CORNWALL.

In 1737, the General Assembly granted to the town of *C* a tract of land for the use of the ministry forever. In 1749, the town of *C* authorized its committee to sell or lease this land, at public or private sale, at their discretion. In 1752, the committee, in pursuance of such authority, leased the land, by indenture, to *S*, for the term of 999 years, *free and clear of all incumbrances, except all rates or public taxes that might arise thereon, to be paid and satisfied by S, his heirs and assigns, during said term.* The title to this land having passed, by sundry conveyances and by descent, to *H*, the town of *C*, in 1838, assessed and taxed it, and, by warrant, collected the tax of *H*. In *assumpsit* brought by *H*, against the town of *C*, for the money so obtained, it was held, 1. that

the import of the clause in the lease regarding taxes, is, that in the event of the land being subsequently taxed, under the authority of the legislature, the lessee, not the lessor, is to pay the taxes so imposed; 2. that the lease so made is not illegal, as a violation of the trust; 3. that *H*, standing upon the same ground as the original lessee, cannot complain, when the contemplated event —the taxation of the land by legislative authority—takes place, that it is an infringement of his rights; 4. that the repeal of the act of 1702 exempting lands given for the maintenance of the gospel ministry from taxation, having thus the assent of the parties, is free from the constitutional objection and operative, as between them; 5. that the actual exemption of the land from taxation previous to 1838, does not affect the construction of the contract, as it was clearly protected by the act of 1702, until the repeal in 1821; 6. that if the town of *C* has any remedy against *H* on the covenant, this does not take away its right of taxing the land; consequently, the action brought by *H*, is not sustainable.

*Litchfield,*
June, 1841.

Hart
*v.*
Town of Cornwall.

THIS was an action of *assumpsit* to recover the amount of a tax imposed by the town of *Cornwall* upon certain lands of the plaintiff, which he had been compelled to pay.

By an act of the General Assembly of this state, passed in *October* 1737, entitled "An Act for the ordering and directing of the sale and settlement of all the townships in the *Western Lands,*" it was provided, that each town on the *Housatonic* river should be divided into 53 rights, one of which should be for the use of the ministry forever, that should be settled in the town according to the constitution and order of the churches established by the laws of the government; one for the first gospel minister settled as aforesaid; and one other right for the support of schools in such town. The town of *Cornwall,* one of the towns embraced in the provisions of this act, was sold in 1738; and, by a vote of the town, passed in *December* 1749, a committee, appointed for that purpose, were authorized to sell or lease the parsonage lands at public or private sale, at their discretion. On the 1st of *April* 1752, the committee, in pursuance of this vote, for the consideration of 327 *l.* 10 *s.* old tenor money, leased, by indenture, to *Ezra Squier* the parsonage right, for the term of 999 years; in which lease was the following clause: "To have and to hold the said demised premises, with all the appurtenances thereof, unto to the said *Ezra Squier,* his heirs and assigns, for and during the term of 999 years next ensuing the date hereof, free and clear of all incumbrances, mortgages or other liens, during the said term, except all rates or public taxes, that may or shall arise thereon, to be

*Litchfield,*
*June, 1841.*

*Hart*
*v.*
*Town of Corn-*
*wall.*

paid and satisfied by him, the said *Ezra Squier*, his heirs and assigns, during the above said term." On the 2nd of *April* 1752, *Squier*, by deed of warranty, conveyed the land so leased to him to *Ephraim Sanford*; from whom, by divers intermediate conveyances, it came to *Titus Hart*, the father of the plaintiff, and from him it descended to the plaintiff, as his heir at law. The plaintiff and those under whom he claims, have been in possession of this land, claiming title thereto adversely to all other persons, for more than fifty years last past. Buildings of various descriptions have been erected, by the plaintiff, and now remain thereon, of the value of more than 3,000 dollars. In 1838, the land and buildings were assessed and taxed, by the town of *Cornwall*; and the tax was collected of the plaintiff by warrant, and paid into the treasury of the town.

A case embracing these facts, was agreed to, by the parties, and reserved for the advice of this court. If the defendants had a right to tax this property, judgment was to be entered for them; if they had not, the plaintiff was to recover.

*L. Church* and *Sedgwick*, for the plaintiff, contended, 1. That the land on which the taxes paid by the plaintiff were laid, having been given " for the use of the ministry forever," were within the statute of 1702, and exempted from taxation. See the cases cited *infra*.

2. That the repeal of this act, at the revision of the statutes in 1821, was inoperative upon this land, which had been given long before, under that act. The operation of the repealing act was prospective only. To give it a retrospective operation would be unconstitutional, as impairing the obligation of contracts. *Atwater* v. *Woodbridge*, 6 *Conn. Rep.* 223. *Osborn* v. *Humphrey*, 7 *Conn. Rep.* 335. *Landon* v. *Litchfield*, 11 *Conn. Rep.* 257.

3. That the lease of 1752 did not subject this land to taxation. In the first place, the "rates or public taxes" therein mentioned, must mean such as are *legally* imposed, leaving the question what taxes are legally imposed, as wide open as before. Secondly, the town were mere *trustees* of this property, and had no authority to dispose of it in this way. *Langdon* & al. v. *Plymouth* & al. 12 *Conn. Rep.* 113. Thirdly, the stipulation of the lessee, if binding on him, did not affect the plaintiff. Fourthly, it does not even purport to confer on

the town any power to tax this land.   For aught that is con-   *Litchfield,*
tained in the lease, this tax was illegally imposed.   Now, if   June, 1841.
the plaintiff has violated his covenant, by refusing to pay ille-   Hart
gal taxes, let the town sue him on his covenant.   Fifthly, the Town of Corn-
parties have given a practical construction to the stipulation   wall.
in question; no tax having been imposed on this land from
the execution of the lease in 1752 to 1838.

*Seymour* and *Wheaton,* for the defendants, insisted, 1. That
admitting the town of *Cornwall* were trustees of this prop-
erty, there was no violation or abuse of their trust, by the
disposition they had made of it.   It was an appropriation of
it "for the use of the ministry forever:" at least nothing ap-
pears to the contrary.

2. That the objects of the grant being carried out, the par-
ticular subject of stipulation in the lease was within the con-
troul of the parties to that instrument.   The lessors might
lawfully take, and the lessee give, a contract to pay the pub-
lic taxes—*i. e.* taxes imposed by public authority—on the
land.

3. That the fair construction of this contract, is, that the les-
see, his heirs and assigns, should pay such taxes on the land
as should be imposed by, or under authority from, the General
Assembly.

4. That the covenant of the lessee runs with the land, and
binds those who claim under him.

5. That the taxes now in controversy being imposed in
pursuance of subsisting acts of the General Assembly, of
which the repealing act of 1821 is one, such taxes are em-
braced by the contract, and the plaintiff is liable to pay them.
As to him such repealing act is not unconstitutional, as it does
not impair, but rather goes to enforce, the obligation of the
contract in question.

6. That it may well be doubted, whether the repealing act
of 1821 comes at all within the constitutional interdiction.
See the opinion of *Church, J.* in *Landon* v. *Litchfield,* 11
*Conn. Rep.* 265. & seq.

WILLIAMS, Ch. J.   The plaintiff claims, that as the land
in question was sequestered to pious and charitable uses, it
was forever exempted from taxation, by the act of 1702 ; and

that the repeal of that act, in the revision of the statutes in 1821, is unconstitutional and void ; and he relies upon the cases of *Atwater* v. *Woodbridge*, 6 *Conn. Rep.* 223., *Osborn* v. *Humphrey*, 7 *Conn. Rep.* 335., and *Landon* v. *Litchfield*, 11 *Conn. Rep.* 257. The defendants claim, that those decisions do not apply to this case ; because the parties to this lease explicitly provided for the event of taxation, and that, in such event, the lessee should pay such taxes.

It is very certain, that in the above cited cases, no such provision appears to have been made in the lease. In the case of *Parker* v. *Redfield*, 10 *Conn. Rep.* 490., there seems indeed to have been a provision somewhat similar ; but it was not much relied upon, by the counsel, nor alluded to, by the court. That case having been decided upon other grounds, it ought not to controul the decision of this.

The enquiry then arises, what did the parties intend, by this unusual clause in this lease ? They must have had some object in guarding against any liability of the lessors against rates or public taxes, " *arisen or to arise*, on said lands." In common cases, all that a vendor or lessor would want to guard against, would be taxes which have arisen. Here they except, not only those *arisen*, but those which *may arise*. They must, then, have contemplated, that in future, rates or taxes might arise, or be laid upon the lands. And before the constitution was adopted, we see not that there was any restraint upon the power of the legislature upon this subject, except their own sense of justice. They then had the power, (and the parties must have contemplated the exercise of it,) to direct that these lands should be taxed. In contemplation of this event, it was very proper, that the parties should come to an explicit understanding with each other, by whom these taxes should be paid. Had nothing been said in relation to it, the lessee might have claimed, that he had purchased these lands founded upon the legislative declaration that they should forever be exempt from taxes, and paid a price accordingly ; and so that the lessors should pay the taxes. To leave no question open upon this subject, the parties make a provision, the import of which, we think, is, that if this event should happen, and taxes be imposed, the lessee, not the lessors, should pay them ; and there can be no reason to doubt, as the lessee assumed this burden, he must have had a suitable deduction in the price.

İt is said, that a sale of this sort, by the town, would be illegal ; a violation of their duty as trustees ; and the case of *Langdon* v. *Plymouth* is cited. If such a stipulation was entered into *bonâ fide*, because the trustees thought it better to sell in this way, than for the town to risk the consequence of such an alteration of the law, we can see nothing illegal or improper in it. There is certainly nothing in this case tending to shew that the transaction was not a fair one, and for the benefit of all concerned. Nor is this the case, or these the parties, to raise that question.

*Litchfield,*
June, 1841.

Hart
*v.*
Town of Cornwall.

We understand, then, the parties to this lease to contract with each other and their representatives, that if in future the legislature should modify or repeal the act of 1702 ; if they should say, that they will impose a state tax upon this land; or authorize the town or other corporation to do the like, as they may on other lands, then the lessee agrees to pay such taxes ; and the lessors are to derive all the advantage they can, by virtue of such a change of the law. We are not able to give any other construction to the stipulations of this lease. The purchaser, then, doubtless for a reasonable consideration, contracts to pay the taxes which in future shall arise—the *public* taxes—that is, the taxes which shall be imposed by *public* authority. It is said, this means *legally* imposed. No doubt that is meant ; and we are now to enquire, whether the tax in question was legally imposed.

As taxes are all to be laid by one rule, and as towns have a right to tax the same property within their limits that the state may, it cannot be doubted, that if the state could, as it respects this plaintiff, constitutionally repeal the act of 1702, then the town must have a right to impose this tax.

Is the repeal, then, of the act of 1702, unconstitutional, as it respects this party ? Do the decisions, which this court has made, above referred to, affect a case like this ? And can this plaintiff, (for he must stand upon the same ground as the original lessee,) who has received this land upon an express agreement, complain that his rights are affected, or his contracts impaired ? He took the land, subject to taxation, whenever the General Assembly should so direct ; and promised that, in that event, he would pay those taxes. The legislature have now so directed ; and why should not the lessee, and those who have his rights, comply with the obliga-

tion to pay? The town of *Cornwall*, with whom the legislature may be said to have contracted, gain nothing, by construing this act to be void. On the contrary, they lose thereby the taxes which would otherwise be paid to the town, and which were stipulated to be paid, by a person, who chose, as we may believe, to assume this obligation, for the sake of the diminished price. The construction, therefore, claimed by the plaintiff, so far from carrying into effect the act of 1702, by giving the benefit of the exemption from taxes to the town of *Cornwall*, in fact gives it to another person—a person who did not purchase it, but who, on the contrary, impliedly, if not expressly, covenanted, that he would pay the taxes, whether imposed by the town of *Cornwall*, or other public authority. The construction, then, claimed by the plaintiff, would deprive those intended to be benefited by the legislature, of any benefit, and give it to those who had contracted not to claim it. And this construction, while it only did what the original parties contemplated might be done, would, in effect, impair and destroy the contract entered into in 1752, in expectation of this very event.

Without disturbing the decisions before made, we think this case differs in principle from them. The grantors, in this case, anticipating this event, provided for it, and are really to derive an advantage by it. They may, therefore, be said to have consented to it. And if both parties to a contract assent to the alteration of it, there can be no constitutional objection to such alteration.

Nor is there any sufficient objection arising from the time when the legislature acted. When this lease was made, it must have been contemplated, that the action of the legislature might be at *any* future time. The provision, therefore, is, for taxes that *may* or *shall* arise ; that is, at any time hereafter. Whenever, therefore, the legislature acted, the minds of the parties met; and of course, this contract is not impaired, by the act of one of the parties. We do not see, therefore, why this plaintiff should not be subject to the burthen, which the original lessee voluntarily assumed.

It is said, however, that this is a covenant, and is to be pursued as such ; but it gives no right to tax the land. It is rather a qualification of the interest of the lessee in the land. The stipulation in effect is, that although the land is by statute

at present exempt from taxation, if the legislature should repeal this exemption, I will claim nothing by it, but pay the taxes so imposed ; so that, if there be any benefit from such repeal, you shall have the benefit of it. If the covenant to pay taxes means anything, it imports that taxes may, in some event, be imposed. And if they may be legally imposed, surely they may be collected ; and if collected, it can hardly be claimed, that an action of *assumpsit* will lie to recover back those taxes, that the defendants in that action may bring another action of covenant, because the plaintiff in this action refused to pay them.

*Litchfield,*
June, 1841.

Hart
*v.*
Town of Cornwall.

It was also suggested, that as the land had not been taxed until 1838, this was evidence of a construction given by the parties to this contract, tending to explain it. In doubtful cases, contemporaneous usage may be some evidence of the intention of the parties. But as the act was not repealed until nearly 70 years had elapsed from the time of making the contract, a usage of 18 years since would furnish but little evidence as to the meaning of the original parties.

Upon the whole, this court advise the superior court, that the land in question may be taxed ; and that the defendants are entitled to judgment.

In this opinion the other Judges concurred.

Judgment for defendants.