WASHBAND vs. WASHBAND.

A. at his own expense, built a plaster mill on the land of B., in pursuance of a verbal agreement that A. might own, and use said mill as his own. Subsequently B. conveyed said land to the defendant, who, by a parol agreement, bought the mill of A., gave his promissory note for the price, and enjoyed it thereafter for some years. Held, that there was a valid consideration for the note.

Where the defendant, in an action upon said note, claimed that it was given, while he was subject to an overseer, appointed in the second stage, without such overseer's consent, and was therefore invalid; and it appeared that such overseer was appointed for no limited time, but generally, and while the defendant was subject to an overseer in the first stage, who had been appointed for the term of one year, which had not expired when the overseer in the second stage was appointed, but which expired before such note was given; it was held, that said appointment of the overseer in the second stage being made generally, continued, at most, only for the remainder of such term, for which said overseer in the first stage was appointed, and therefore, that when the note was made, the defendant was under no disability.

The interest upon a promissory note for a particular sum, payable with annual interest on the happening of a certain event, should be computed from the date of such note.

THIS was an action by Seth Washband the payee against Sterling S. Washband, the maker of a promissory note.

The declaration, embraced the common counts, and a count upon said note, which was as follows:

" On the 2d day of October, A. D. 1843, the plaintiff owned and possessed a certain plaster mill, situated in the town of Derby, in New Haven county, and said mill, consisting of the grinding stones and machinery, shafting, belts and fixtures, and everything in complete running order, and that he then and there sold to the defendant said mill, complete in all its parts, at the special instance and request of the defendant, for the sum of two hundred dollars, and the defendant, in consideration thereof, made and executed his certain writing or note, under his hand by him well executed, thereby promising to pay to the plaintiff, on and after the death of Josiah Washband, the sum of two hundred dollars, with annual interest, as by said writing in court ready to be shown appears; and

the plaintiff says, that the said Josiah Washband died on the 3d day of September, A. D. 1847, and that said note, by the terms thereof, became due and payable on said 3d day of September, A. D. 1847."

The cause was tried on the general issue, at the term of the superior court holden at New Haven, in December, 1855.

The defendant claimed that there was no consideration for the note.

The plaintiff, having proved the execution of the note, offered evidence to prove that, on the day of the date, the father of the plaintiff, Josiah Washband, made and delivered to the defendant, who was also a son of said Josiah, a deed of a piece of land, situated in the town of Oxford, bearing the same date; that, some years before the execution of said deed, the grantor, being the owner of the land, made a verbal agreement with the plaintiff, that he might build a plaster mill on it, at his own expense, and own and use it as his own; that the plaintiff did so build it, at his own expense, and continued to possess and enjoy it until the execution of said note, when, by a verbal agreement, he sold and delivered it to the defendant. Said mill was, in its construction, connected with a saw mill, mentioned in the deed, by spikes, and stood on timbers connected with the mill and soil. On the execution of the note and deed, said Josiah, being about to divide and settle his estate among his children, and wishing to convey to the defendant the land mentioned in the deed, the defendant, with full knowledge of all the facts aforesaid, and all the circumstances and objects of said division and settlement, agreed with the plaintiff by parol, to buy said plaster mill of him, and gave said note therefor, and thereafter enjoyed it for some years, until it was taken down. The defendant insisted that, upon the facts aforesaid, the plaster mill was a part of the freehold, and, there being no sale of it in writing to the defendant, by the plaintiff, the defendant got nothing, and the plaintiff lost nothing by said verbal sale and relinquishment of the plaintiff. Upon these grounds, the

defendant asked the court to rule that the note was without consideration ; the court ruled that the plaintiff had an interest or right in said mill and its materials, which he could sell or relinquish to the defendant, and if he did so, and the defendant, with full knowledge, bought it, and took it and gave his note therefor, the consideration was good, though such sale was by parol. If, however, the defendant did not and could not get anything by the sale, the note would be void. It was also proved that said Josiah was dead.

The defendant further claimed that said note was void, because, when it was given, he was under an overseer in the second degree, who did not assent to it. To establish this defence, and prove that one Wheeler was such overseer, the defendant read in evidence a certified copy of an instrument in writing, by which it appeared that the selectmen of the town of Oxford, on the 20th day of June, 1842, appointed Robert Wheeler and Nathan J. Wilcoxson overseers of the defendant, for the term of one year from said date. Also, another paper, which was proved to be the original act of two justices of the peace of said town, appointing said Wheeler an overseer of the defendant in the second stage, generally, and without specifying, or limiting the time during which said office was to continue.

The plaintiff claimed that said supposed appointment of overseer in the second stage was void, because it was unlimited in duration. It was also claimed that both said appointments were void for other reasons, but no opinion being expressed by the court upon such claims, a further statement of the facts is rendered unnecessary.

The defendant requested the court to instruct the jury, that the note did not draw interest until the death of Josiah Washband. The court, however, instructed them that it drew interest from its date.

The jury returned a verdict for the plaintiff, and the defendant thereupon moved for a new trial.

*Munson,* in support of the motion.

1. That the plaster mill in question was a fixture, and could not be conveyed by parol agreement, is evident from the declaration which alleges that it consisted in part of " fixtures," &c., and from the facts proved.   The jury therefore should have been so instructed.   It was not enough that the owner of the land agreed with the plaintiff, that he might build the mill on his land, and then " own and use it, as his own."   The question was whether it was annexed to the freehold.  1 Sw. Dig., 534–5.  15 Shep., 545.  The question was not whether the defendant " did, or could," in point of fact, get any thing from the plaintiff, for he might have done so tortiously.   The jury are not supposed to know whether the defendant " could get any thing legally, by the verbal conveyance."

2. The overseership, both in the first and second degree, was fully established.   The appointment, offered in evidence, was sufficient to establish both facts.   The decree of appointment, in the second degree, finds all the facts essential to its validity, including the fact of the first appointment by the selectmen.   The two justices are a *quasi* court for this purpose, and their decree and record is entitled to as much respect as if it had been made by a single justice or court of probate, or any other court.  1 Greenl. Ev., 547–50.

3. The certificate of the appointment, in the first degree, was entirely superfluous, for the fact was established by the decree of the two justices.

4. The rule, as to interest on the note, was incorrectly given ; the principal is only due on and after the death of Josiah Washband, and the interest can only run from the maturity of the note.

*Wooster,* contra.

1. There was a valid consideration for the note, if the plaintiff owned the plaster mill in question.

That one man may own any article of property, whether

a building or other structure, erected on the land of another, by the license and permission of the owner of the land, is well established by repeated decisions in this state and elsewhere. 1 Sw. Dig., 516. *Curtiss* v. *Hoyt*, 19 Conn. R., 165. *Baldwin* v. *Breed*, 16 Conn. R., 60.

The mill was personal property, and the only conveyance necessary was liberty to the defendant to take possession.

2. The statute authorizing the appointment of overseers, is in derogation of common right, and must be construed strictly. *Knapp* v. *Lockwood*, 3 Day, 131. *Chalker* v. *Chalker*, 1 Conn. R., 79.

No disability to contract will be presumed; the party claiming such disability must prove every fact material to constitute it.

3. The appointment of an overseer, in the second stage, by two justices, was void.

4. If the court erred in its ruling, yet, as the defendant did not suffer from that ruling, and as the case shows there were other fatal difficulties in the defence, a new trial will not be granted. *Nicholson* v. *N. Y. & N. H. R. R.*, 22 Conn R., 74.

5. The note itself provided for the payment of interest, conformably to the charge of the court.

STORRS, J. 1. There is no ground for the claim that there was a want, or failure of consideration, in regard to the note on which this suit was brought. Although the verbal agreement between the plaintiff and his father might have conferred no right on the former, and could not be enforced by him while it remained executory, it is quite clear that he, having built the plaster mill at his own expense in pursuance of that agreement, had, in equity, a perfect title to it, and a right to the use of the land on which it stood, for its enjoyment, which a court of chancery would protect against any claim on the part of the father. The father would no more be allowed to deprive the plaintiff of that mill, or the use of

the land, than if he had conveyed them to the plaintiff by deed. The conveyance by the plaintiff to the defendant, of the equitable interest which the former acquired from his father, constituted a valid legal consideration for the note in question. And the unmolested enjoyment by the defendant of the mill, until he demolished it, furnishes a complete answer to the claim that there was a failure of that consideration.

2. The defendant claimed that the note was given, while he was subject to an overseer, appointed in the second stage, and without his consent, and that it was therefore invalid. It appeared that such overseer was appointed for no limited time, but generally, and while the defendant was subject to an overseer appointed for the period of one year, which had not then expired, but which expired before the note was given. Without examining the other objections taken to the appointment of the overseer in the second stage, we are of opinion that it should have been made expressly for the unexpired part of the term, for which the overseer was appointed in the first stage, or that, if not so expressed, but made generally, it continued at most only for the remainder of such term, and therefore that, as that term had expired when the note was executed, the defendant was then under no disability. Although the statute does not, in terms, prescribe a limitation of time in regard to such an appointment in the second stage, as it does where an overseer is appointed in the first, it appears to us to have been no less intended in the former case than in the latter. The appointment of one, as overseer in the second stage, does not abrogate his office under his first appointment, and is rather a continuation of it, with additional powers and duties, than an original, primary, and independent trust conferred upon him. Those new powers and duties are superadded, in order to enable him more effectually to accomplish the purpose for which the statute was designed; and the several consecutive steps, which are prescribed to overseers in both stages, constitute

only parts of one entire and connected system of measures, adapted to that object. It is questionable whether it is not by viewing the subject in this light, and giving to the statute a correspondent construction, that a person, who is subject to an overseer in the second stage, has been always held, and we doubt not correctly, to be disabled from making contracts without the consent of such overseer. The reasons why the powers of one of these kinds of overseers should be limited as to the time of their duration, apply equally to those of the other; while the symmetry of the system seems to require that, in this respect, there should be no difference between them. Our opinion on this point is not entertained without some distrust ; but if there is a fair doubt respecting it, we should feel bound by the rules of construction applicable to statutes like the one on which this question arises, which disables persons from managing their affairs, to give it a restricted meaning in regard to the extent, as well as the duration, of the powers conferred by it.

3. The jury were properly instructed that the interest on the note in question should be computed from its date. The promise was to pay, on the happening of a particular event, a certain sum with annual interest; showing most clearly, that the interest on that sum was to be paid annually from the time of making the promise. There is no ground for the claim that the intention, apparent on the face of the note, was, that the interest should accrue, only from the time when the principal was made payable.

We do not advise a new trial.

In this opinion, the other Judges, ELLSWORTH and HINMAN, concurred.

New trial not granted.