TALCOTT H. RUSSELL, RECEIVER, *vs.* CITY OF NEW HAVEN
AND OTHERS.

Trinity Church owned certain real estate in the city of New Haven, exempt
from taxation under the statute of 1702, which it leased for sixty years
to a life insurance company, with a contract that the lessee should
erect a substantial building on the land according to plans approved by
the lessor and should pay all taxes and assessments on the property,
and that the lessor at the end of the term should pay for the building
a price to be fixed by appraisers. The building was erected by the
lessee. Held—

1. That the building, as distinct from the soil, was taxable.
2. That it was real estate, and as such subject to a tax lien.
3. That the title to it was in the lessee and not in the lessor.

The tax assessment was on the building alone ; the certificate of lien
covered both the building and the land. Held that the certificate was
not invalidated by its embracing the land, but was valid as to the
building.

The interest of the original lessee passed to an insurance company of
another state, which took its business. This company the first year
filed a sworn tax list as a resident; but afterwards failing to do so, the
assessors assessed the property and added ten per cent. for the failure
of the company to file a sworn list. The tax and the ten per cent. were
paid by the receiver of the company upon notice from the tax collector
that the amount was due. Whether the company might not be regarded
as submitting itself to the jurisdiction of the assessors so that they
might regard it as a resident : *Quære.*

However this might be, yet as the receiver had paid the ten per cent. addi-
tion without any compulsion, it was to be regarded as a voluntary pay-
ment, and that he could not recover it back.

The statute requires that certificates of tax liens shall describe the real
estate covered by the lien. The property in this case was described as
" a certain granite and brick building, known as the Insurance Building
in said city, owned in whole or in part by the estate of the National
Capital Insurance Company." Held to be a sufficient description.

[Argued June 13th—decided November 22d, 1883.]

ACTION to set aside certain tax liens and to recover taxes
claimed to have been illegally assessed and collected, and
for an injunction ; brought to the Superior Court. Facts
found and case reserved for advice. The case is sufficiently
stated in the opinion.

*J. W. Alling* and *T. H. Russell*, for the plaintiff.

*C. R. Ingersoll* and *C. T. Driscoll*, for the defendant.

CARPENTER, J.: This is an action by the receiver of the American National Life and Trust Company to set aside certain tax liens as clouds upon his title, to compel the tax collector to repay to the plaintiff certain sums paid by him for taxes due from the National Capital Insurance Company and its estate, and, contingently, to compel the application of the sums so paid to the payment of certain taxes due from the estate of the American National Life and Trust Company. The complaint also demands an injunction restraining the tax collector from collecting said taxes.

The fundamental question in this case is, whether the property was rightfully assessed. And here we understand that it is admitted that the property in fact belonged to the estate assessed, but it is claimed that on account of its peculiar situation it was not taxable, or, if taxable, that it was personal property and not real estate, and therefore that it was not subject to the tax lien.

The property is a building on leased land, the land being owned by the society of Trinity Church in New Haven. The lease is to run sixty years at an annual ground rent payable quarterly. The lease provides that the lessee shall pay all taxes and assessments on the property, and erect on the same a substantial building according to plans approved by the lessor; and also that the lessor at the end of the term shall pay for said building a sum to be fixed by appraisers. The building was erected, and the building, not the land, is the property taxed. It is conceded that the land is exempt from taxation under the statute of 1702.

The plaintiff claims that the building, when erected, became a part of the land, belonged to Trinity Church, and partook of the exemption. In support of this claim he cites *Osborne* v. *Humphrey*, 7 Conn., 335, and *Parker* v. *Redfield*, 10 Conn., 490. The first of these cases decides that a building erected on land exempt from taxation under the statute of 1702, and leased for 999 years, was not taxable, although the person holding it at the time held under a warrantee deed. The authority of that case is materially impaired by a statute passed in 1859, providing that such

Russell *v.* City of New Haven.

estate shall be taxable, in connection with the decision of this court in *Brainard* v. *Colchester*, 32 Conn., 407. See also *Lord* v. *Litchfield*, 36 Conn., 116.

But aside from the fact that *Osborne* v. *Humphrey* is practically overruled, we think this case is clearly within the distinction taken in *Parker* v. *Redfield*. In that case, which related to this same property, it was held that buildings erected on the land by the lessees under an agreement that they might be removed at the end of the term, were the property of the lessees and were taxable. Had there been an agreement in this lease that the lessees might remove the building, that case might have been directly in point. But instead of such an agreement, the agreement is that the lessor shall purchase the building. That circumstance, however, does not change the legal aspect of the case. The principle applicable to the two cases is precisely the same in reference to the mere question of taxation. An agreement to purchase recognizes the right of property in the lessee, as completely and as clearly as does an agreement that he may remove the building.

It is hardly necessary, but we may refer to other provisions of the lease which contemplate and recognize the ownership of the building as being in the lessee. The rent reserved by the lease is expressed to be a ground rent— "yielding and paying therefor a ground rent." "The ground rent herein and hereby reserved." Ground rent implies that buildings placed upon the land by the lessee shall be his property. "Ground rent is rent paid for the privilege of building on another's land." Bouvier's Law Dictionary. The demised premises are expressed to be land and land only. The rent is to be paid for land, and the amount to be paid during a large portion of the time is to be fixed by an appraisal of the land. The lease is so drawn as to carefully exclude the idea of ownership in the building by the lessor. We conclude without hesitation that the building was absolutely owned by the lessee, subject only to the right of the lessor to purchase it.

And we are equally clear that the building is taxable.

It is the building and not a leasehold interest that is taxed. The lease conveys only a right to erect and maintain on the land for a given time the building in question. It conveys no interest in the building. That right is not taxed, but the building erected pursuant thereto is taxed. The party is not taxed as lessee but as owner.

Our next inquiry is, what is the nature of the estate which the lessee has in the building? Is it real or personal estate? This question is immaterial so far as the right of taxation is concerned, but is important in determining the question whether any tax lien exists.

In *Parker* v. *Redfield* it was held that it was personal property. That was an application of the familiar doctrine that buildings erected by tenants with the consent of the landlords, for a temporary purpose, and which may be removed at the end of the term, are regarded as personal property. But in this case the building was not erected for a temporary purpose and neither party contemplated its removal. The size and character of the building, and the materials of which it is constructed, preclude the idea of a removal, while the provision for purchasing at the end of the term by the lessor, by strong implication forbids it. It is clear, then, that the parties intended that the building should at once become a part of the realty. The plaintiff seems to assume that for that reason it necessarily becomes the property of the lessor and if taxable at all taxable in its name. But in this we think the plaintiff errs. There is no practical difficulty in such a division of real estate and it occasions no legal embarrassment. "A man may have an inheritance in an upper chamber though the lower building and soil be in another." 1 Cruise's Digest, 49. "A dwelling-house may be the subject of ownership in fee although its owner may have no further interest in the land on which it stands than a right to have it remain there. So one may have an estate in a single chamber in a dwelling house, and may have a seizin of such house or chamber, and maintain ejectment therefor if deprived of its possession, although, if such house or chamber be destroyed, all

interest of the owner thereof in the land on which it stood might thereby be lost." 1 Washb. Real Property, p. 4.

In *Cheeseborough* v. *Green,* 10 Conn., 318, distinct interests in severalty in the same building were recognized in equity. In *Washband* v. *Washband,* 24 Conn., 500, a son erected on the land of the father with his consent a mill. The father sold the land to a third person. The purchaser purchased the mill of the son giving a note therefor. In a suit on the note the defense was a want of consideration. STORRS, J., says : — "Although the verbal agreement between the plaintiff and his father might have conferred no right on the former, and could not be enforced by him while it remained executory, it is quite clear that he, having built the plaster mill at his own expense in pursuance of that agreement, had, in equity, a perfect title to it, and a right to the use of the land on which it stood for its enjoyment, which a court of chancery would protect against any claim on the part of the father."

No argument can be drawn from the fact that no provision is made for formal conveyance by the lessee. His title is an equitable one, arising under a contract contained in the lease it is true, but not conveyed by the lease. It arises primarily and principally from the expenditure of money in the construction of the building. When the stipulated sum is paid at the end of the term the distinct title of the lessee terminates, and the equitable title as well as the legal vests in the lessor. No deed or other conveyance is required. The property therefore is real and not personal estate.

But the plaintiff says that it is real estate for a term of years by contract and not by gift or devise. It is not an estate held by contract. The only contract in the case is between Trinity Church and the insurance company. It is obvious that the insurance company did not derive its equitable title to the building from Trinity Church. The church never owned it and never attempted to convey any interest in it as we have seen. It only conveyed an interest in land

as distinguished from the building. The contract gave the privilege of erecting the building, but that gave no title to the building. The title was not derivative but originated in the erection of the building.

Moreover, the estate is not an estate for years but an estate in fee simple. The whole title is in the lessee or its assigns. In every estate for years there is a remainder or reversion. In this there is none. The lessor has a right at a given time to become the owner of this building, but it has no present interest in it. It is like any other real estate under a contract of sale. Until the sale is completed no title passes.

It is next claimed that the tax liens for 1876 and 1877 are invalid because they do not follow the assessments. The deviation is this:—the assessment is on the building and the certificate of lien covers both land and building. The certificate is clearly divisible. It is inoperative as to the land but valid as to the building. It is too technical to hold that the whole lien is vitiated by an inadvertence of this character.

For the year 1879 the property was assessed as the property of the National Capital Insurance Company of Washington, which had acquired the interest of the American National Life and Trust Company and taken its business, and ten per cent. added for not returning a list under oath as required by law. This is claimed to be illegal as the company was non-resident. It appears that the company itself in 1876 gave a sworn list of its property as a resident. Whether this was a submission to the jurisdiction of the assessors so as to justify them in treating the company as a resident: *quære.* If the company was regularly doing business in this state as the successor of the American National Life and Trust Company, perhaps that would be the better view.

It is very clear that the tax, except the ten per cent. addition, was justly due and cannot be recovered back; and as to the ten per cent. we are inclined to think that the payment was a voluntary one. There does not seem to have

been any compulsion, but the payment was in response to a letter from the collector, simply calling the receiver's attention to the fact that taxes to a considerable amount were overdue and asking him to make provision for their payment. There was no threat to levy on personal property, and no intimation of an intention to enforce a lien by a sale of real estate.

Another point made by the plaintiff is that some of the certificates of lien do not contain a sufficient description of the property.

The statute expressly requires that the certificate continuing the lien in force shall describe the real estate. The certificates for the town and city of New Haven and for the school district bear the same date, are framed in the same language, except as to the amount of tax and the corporation to which the tax was due, and were recorded at the same time, and apparently together. They were probably written by the same hand and on the same' piece of paper. The town certificate contains a full description of the property. The others, after naming the building, describe it thus :—" bounded and described as follows, to wit : [same as above.] " Now if we are right in supposing that they were written or printed on the same piece of paper, and were recorded together, perhaps the description by reference would be allowable ; as any person looking at the certificate, or the record, would have the reference before him, and would not be obliged to look for another and independent document. But aside from this we are disposed to regard the description as sufficient. The building, which is the property taxed, and which alone is subject to the lien, is described as follows,—" A certain granite and brick building known as the Insurance Building in said city, owned in whole or in part by Est. National Capital Insurance Company." There is no ambiguity about this description. It assumes that there is but one building in New Haven known as the " Insurance Building " and owned by the estate of the National Capital Insurance Company,

and that building is clearly pointed out so that no one can mistake it.

We advise judgment for the defendants.

In this opinion the other judges concurred.