HOTSHOE ENTERPRISES, LLC, ET AL. *v.*
CITY OF HARTFORD
(SC 17885)

Katz, Palmer, Vertefeuille, Zarella and Schaller, Js.

Argued November 28, 2007—officially released January 1, 2008

*Robert M. Shields, Jr.,* with whom were *John Rose, Jr.,* corporation counsel, *Wesley W. Horton* and, on the brief, *Catharine H. Freeman,* assistant corporation counsel, for the appellant (defendant).

*Peter R. Reynolds,* with whom was *Paul W. Orth,* for the appellees (plaintiffs).

*Opinion*

PER CURIAM. The defendant, the city of Hartford, appeals[1] from the judgment of the trial court sustaining the tax appeal, brought pursuant to General Statutes

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

§ 12-119,[2] by the plaintiffs, fourteen owners of condominium hangar units at Brainard Airport.[3] The defendant contends that the trial court improperly concluded that the condominium hangar units are exempt, pursuant to General Statutes § 12-64 (c),[4] from municipal property taxes. *Hotshoe Enterprises, LLC* v. *Hartford*, 50 Conn. Sup. 476, 486, 939 A.2d 641 (2006). We affirm the judgment of the trial court.

[2] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set . . . the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . . In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[3] The following businesses and individuals are named as plaintiffs in this appeal: Hotshoe Enterprises, LLC; S and A Enterprise, LLC; Brainard Hangar Corporation; LOR-ED, LLC; Aaron Gleixner and Heidi Gleixner; Ted J. Gordon, LLC; Mark E. Hagopian, D.M.D. and Associates, P.C.; Richard Tarantino, Trustee and Eriko Tarantino, Trustee; Sherwood P. Doolittle and Maryann C. Doolittle; Robert Morande; Bruce Bemer; Brad Carlton; Towerview, LLC; and John Droney III.

[4] General Statutes § 12-64 provides in relevant part: "(b) Except as provided in subsection (c) of this section, any land, buildings or easement to use air rights belonging to or held in trust for the state, not used for purposes attributable to functions of the state government or any other governmental purpose but leased to a person or organization for use unrelated to any such purpose . . . shall be separately assessed in the name of the lessee and subject to local taxation annually in the name of the lessee having immediate right to occupancy of such land or building, by the town wherein situated as of the assessment day next following the date of leasing pursuant to section 4b-38. . . .

"(c) The provisions of subsection (b) of this section shall not be applicable to any land, building or easement belonging to or held in trust for the state of Connecticut at (1) Bradley International Airport or any other state-owned airport, and (2) any restaurant, gasoline station or other service facility or public convenience as may be deemed appropriate by the Commissioner of Transportation for state highway, mass transit, marine or aviation purposes. . . ."

The record reveals the following undisputed facts and procedural history. The state of Connecticut owns and operates Brainard Airport. On December 19, 2003, Connecticut Hangars, LLC (Connecticut Hangars) entered into a lease agreement, pursuant to General Statutes § 13b-42 (b),[5] with the state department of transportation concerning a parcel of land within the airport, measuring approximately 315,885 square feet, for the construction, maintenance and management of hangars. The term of the lease is for thirty years with an option to extend for two additional five year periods. The lease provides for Connecticut Hangars, as lessee, to build and develop six hangars for the storage of aircraft and aircraft equipment through a common interest community and to sell units in the community as leasehold condominium units. The lease further provides that title to all materials purchased for the construction of the facility, as well as all real property, including but not limited to improvements constructed or installed, shall vest in the state and that Connecticut Hangars shall have "no property rights therein or in the Facilities except the right to occupy and use the Leased Premises."

On May 24, 2004, Connecticut Hangars executed a condominium declaration creating a leasehold common interest community, pursuant to the Common Interest Ownership Act, General Statutes § 47-200 et seq., known as Connecticut T-Hangar Condominium (condominium), a leasehold condominium. The declaration provides that the real property of the condominium is subject to the lease from the state, the termination of

---

[5] General Statutes § 13b-42 (b) provides in relevant part: "With the approval of the Attorney General, the Secretary of the Office of Policy and Management and the State Properties Review Board, the commissioner may sell or lease or grant any interest in any airport or airport site or any part thereof, hangars, shops or other buildings or other property owned or held under lease by the state, except that after initiating such approval, the commissioner may temporarily lease any such interest. . . ."

which will terminate the common interest community, and that the declaration is subject to and subordinate to the terms and conditions of the lease. All condominium units are restricted to use as airplane hangars for the storage of aircraft and related equipment, and the use of the units and the common elements is subject to the bylaws and rules of the association. The declaration also sets forth certain restrictions on use, alienation and occupancy, including a right of first refusal retained by Connecticut Hangars as the declarant. Finally, pursuant to the declaration, there is no separation of a unit and its leasehold interest, and the lease controls any conflict between the declaration and the lease.

Subsequent to the creation of the common interest community, Connecticut Hangars conveyed to each plaintiff, by various warranty deeds, unit ownership of designated hangar units of the leasehold condominium, with prices ranging from approximately $48,000 to $60,000. The deeds conveyed a partial assignment of Connecticut Hangar's interest in the lease agreement between the state as landlord and Connecticut Hangars as tenant, including an undivided interest in the unit's share percentage of the common elements. Each warranty deed further set forth the specific obligation of the grantee to convey the unit and its appurtenant interest in the condominium to the grantor free and clear of all encumbrances except those set forth in the declaration within thirty days prior to the end of the lease term.

On or about June, 2005, the defendant imposed a tax on the property of the plaintiffs purporting to assess real property taxes on the various condominium hangar units located at Brainard Airport for the 2004 grand list. Pursuant to § 12-119, the plaintiffs commenced the present action seeking relief from what they claimed was an improper assessment based on the exception provided under § 12-64 (c) (1) for "land . . . belonging

to or held in trust for the state of Connecticut at . . . any . . . state-owned airport . . . ." The defendant responded by denying that the assessments were improper and filing a counterclaim, essentially asserting that § 12-64 (c) is inapplicable because each plaintiff owns a taxable property right by virtue of having received warranty deeds to their individual hangars at the airport. The plaintiffs and the defendant filed cross motions for summary judgment, each conceding that there were no issues of material fact and each claiming entitlement to judgment as a matter of law. The trial court rendered judgment for the plaintiffs following its granting of their motion for summary judgment and its denial of the defendant's cross motion for summary judgment. This appeal followed.

After having examined the record and the briefs and having considered the arguments of the parties, we are persuaded that the summary judgment rendered in favor of the plaintiffs should be affirmed. The central issue of the applicability of the exemption from municipal property tax to the plaintiffs' ownership interest in the leasehold interest under § 12-64 (c) properly was resolved in the thoughtful and comprehensive memorandum of decision filed by the trial court. Because that memorandum of decision fully addresses the arguments raised in the present appeal, we adopt the trial court's well reasoned decision as a statement of the facts and the applicable law on that issue. It would serve no useful purpose for us to repeat the discussion set forth therein. See *Message Center Management, Inc.* v. *Commissioner of Revenue Services*, 282 Conn. 706, 708–709, 923 A.2d 735 (2007); *Lagassey* v. *State*, 281 Conn. 1, 5, 914 A.2d 509 (2007); *Mattera* v. *Civil Service Commission*, 273 Conn. 235, 239, 869 A.2d 637 (2005).

The judgment is affirmed.