******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOWN OF STRATFORD ET AL. *v.*
RAPHAEL JACOBELLI ET AL.
(SC 19332)
(SC 19333)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued May 18—officially released August 18, 2015*

*Alison L. Squiccimarro*, with whom was *Paul M. Grocki*, for the appellants (defendant David Faile et al.).

*Heather M. Brown-Olsen*, with whom, on the brief, was *Aleksandr Y. Troyb*, for the appellants (defendant N.E. Hangar Development, LLC, et al.).

*James W. Donohue*, with whom, on the brief, was *Michael S. Casey*, for the appellees (plaintiffs).

*Opinion*

EVELEIGH, J. The issue presented in these appeals is whether certain aircraft hangars[1] owned by the defendants[2] and located at Sikorsky Memorial Airport (airport), are subject to municipal taxation pursuant to General Statutes § 12-64. The named plaintiff, the town of Stratford,[3] brought this action seeking a declaratory judgment that the hangars are taxable as real property pursuant to § 12-64 (a) and are not exempt from taxation pursuant to General Statutes § 12-74. The trial court rendered judgment in favor of the plaintiff and the defendants appealed.[4] We conclude that the trial court properly applied §§ 12-64 and 12-74 to determine that the hangars are subject to municipal taxation and, therefore, we affirm the judgment of the trial court.[5]

The trial court's memorandum of decision reveals the following relevant facts and procedural history. "The hangars at the center of this dispute are owned by the defendants and consist of aircraft hangars described by the manufacturer as 'portable' T-Hangars . . . and [are] located at [the airport in Stratford]." There are "two primary locations [at] the airport where the [hangars] are situated: the south ramp . . . and the north [ramp] . . . ."

"The [hangars] located at the south ramp . . . are located on land owned by the city of Bridgeport with the land leased to . . . N.E. Hangar Development, LLC [N.E. Hangar]. Each [hangar] was purchased and is privately owned by persons or entities populating the south ramp . . . ." The owners of the hangers at the south ramp "are subtenants of N.E. Hangar . . . pursuant to written sublease agreements." The hangars located on the north ramp of the airport "are situated upon parcels of land owned by the city of Bridgeport and leased directly . . . pursuant to unwritten month to month leases."[6]

"The [owners of the hangars at] the south ramp entered into . . . license and sublease agreement[s]. Each licensee paid 'a one-time license fee for exclusive use of a portion of asphalt paving in which to tie down or provide a [hangar] for storage of general aviation aircraft when not in use. The license fee is paid to [N.E. Hangar].' In addition, each sub-lessee 'pays monthly rent to [N.E. Hangar] for the cost of maintenance and upkeep of the surrounding asphalt apron and for administrative expenses for required coordination with the city of Bridgeport Aviation Commission.' The [hangar] itself may be purchased from any particular supplier and all of the pieces to the [hangar] are erected on site. All [hangars] must be removed at the end of the license term unless sold sooner. . . . [N]o [hangar] is permanently affixed to the ground and is only located in a particular spot pursuant to [the] license [with N.E. Hangar]." The hangars located at the south ramp "range in

size from 998 square feet . . . to 1,400 [square feet]."

"[T]he north ramp [hangars] come with a trailer hitch . . . [and] were previously moved from another location on the airport to the present location." For the north ramp hangars, there is a "monthly rate schedule reflecting fees associated with the leases." "[T]he city of Bridgeport . . . can end [the month-to-month] lease at any time and [the owners of the hangers at the north ramp would] be required to relocate [their hangars] to another parcel on the airport or to another airport entirely." The north ramp hangars "range in size from 805.59 [square feet] to 1,171.05 [square feet]."

"[All of the hangars] are designed for the storage of aircraft, storage of parts and accessories, and protection of aircraft from wind, storm, and sun damage." Moreover, all of the hangers "are devoted to nonpublic use for the purpose of storage and housing of private aircraft."

In 2007 and 2008, the plaintiff included the hangars "on the personal property portion of the grand list." In 2009, "the [hangars] were included on the real property portion of the grand list." After the hangars were assessed as real property in 2009, several hangar owners brought individual tax appeals against the plaintiff, contesting the classification of the hangars as real property instead of personal property. Those appeals were stayed when, in 2011, the plaintiff brought the present action seeking a declaratory judgment that the hangars are properly classified as real property and not exempt from taxation.

The trial court ruled that the hangars were taxable pursuant to General Statutes § 12-64 (a). That statute provides in relevant part: "All the following mentioned property, not exempted, shall be set in the list of the town where it is situated . . . [d]welling houses, garages, barns, sheds, stores, shops, mills, . . . ice houses, warehouses, silos, [and] all other buildings and structures . . . ." General Statutes § 12-64 (a).[7] Additionally, the trial court ruled that § 12-74 did not operate to exempt the hangars from taxation,[8] and that no other statutory provisions, including § 12-64 (b) or (c),[9] nor General Statutes § 12-19a,[10] exempted the hangars from taxation.

On appeal, the defendants challenge the trial court's conclusions that: (1) the hangars are taxable as real property pursuant to § 12-64 (a) and are not exempted by § 12-64 (b) or (c); (2) § 12-74 does not exempt the hangars from taxation; and (3) § 12-19a does not exempt the hangars from taxation. We affirm the judgment of the trial court.

Before considering the merits of the parties' arguments, we set forth the basic legal principles and standard of review applicable to these appeals. "The scope of our appellate review depends upon the proper char-

acterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Kasica* v. *Columbia*, 309 Conn. 85, 92–93, 70 A.3d 1 (2013), quoting *Union Carbide Corp.* v. *Danbury*, 257 Conn. 865, 870–71, 778 A.2d 204 (2001). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *McBurney* v. *Paquin*, 302 Conn. 359, 368, 28 A.3d 272 (2011). "In addition, in examining the meaning of a particular statute, we are guided by fundamental principles of statutory construction. See General Statutes § 1-2z; see also *Testa* v. *Geressy*, 286 Conn. 291, 308, 943 A.2d 1075 (2008) ('[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature' . . .)." *Goodspeed Airport, LLC* v. *East Haddam*, 302 Conn. 70, 76, 24 A.3d 1205 (2011).

"[A]long with these principles, we are also guided by the applicable rules of statutory construction specifically associated with the interpretation of tax statutes. . . . [W]hen the issue is the imposition of a tax, rather than a claimed right to an exemption or a deduction, the governing authorities must be strictly construed against the commissioner . . . and in favor of the taxpayer. . . . Nevertheless, [i]t is also true . . . that such strict construction neither requires nor permits the contravention of the true intent and purpose of the statute as expressed in the language used." (Citation omitted; internal quotation marks omitted.) *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 214–15, 38 A.3d 1183, cert. denied, U.S.    , 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012).

I

The proper interpretation of § 12-64 presents a question of statutory construction; we therefore begin by examining the text of § 12-64 (a) to determine if the plaintiff may subject the hangars to taxation and, thereafter, discuss whether § 12-64 (b) and (c) exempt the hangars from taxation.

A

Section 12-64 (a) provides for taxation of real property, including "garages, barns, sheds, stores, shops, mills . . . ice houses, warehouses, silos, [and] all other buildings and structures . . . ." General Statutes § 12-64 (a). While "hangars" are not explicitly listed in the

text of § 12-64 (a), they will be taxable if their characteristics, as found by the trial court, place them within the purview of the proper construction of the words "sheds" or "all other buildings" in § 12-64 (a).

In interpreting the language of § 12-64 (a), "we do not write on a clean slate, but are bound by our previous judicial interpretations of the language and the purpose of the statute." *Kasica* v. *Columbia*, supra, 309 Conn. 93–94. This court has previously construed the term "building" for purposes of § 12-64 (a) by relying on the dictionary definition of "building" as "a constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy." (Internal quotation marks omitted.) *Eastern Connecticut Cable Television, Inc.* v. *Montville*, 180 Conn. 409, 412, 429 A.2d 905 (1980), quoting Webster's Third New International Dictionary (unabridged).

In *Montville*, this court also applied to the term "buildings" the rule of ejusdem generis, which explains that "where a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumeration." (Internal quotation marks omitted.) *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 413, quoting *Easterbrook* v. *Hebrew Ladies Orphan Society*, 85 Conn. 289, 296, 82 A. 561 (1912). This court concluded that the general characteristics of the real property listed in § 12-64 (a) were that such "buildings" have the characteristics of being "enclosed and . . . [suitable] for occupancy or storage which are the distinguishing features of the listed buildings." *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 413.

In the present case, the trial court determined that hangars fell within the clear and unambiguous language of § 12-64 (a) because "shed" is enumerated in the statute and because the court found that the hangars were "similar to a shed." The court construed "shed" pursuant to its common and ordinary meaning, defining it as "a building with walls and a roof," and concluded that a hangar was "an equivalent." The court also noted that, even if not constituting equivalents to "sheds" under § 12-64 (a), the hangars would nevertheless be within the same general category as sheds and the other enumerated buildings in § 12-64 (a) such that they could be considered as falling within the category " 'all other buildings' . . . ."

On appeal, the defendants claim that the trial court's construction of § 12-64 (a) was not legally and logically correct for several reasons. First, because the trial court defined " 'sheds' " as a type of " 'building,' " the defendants urge a definition of "building" that includes a requirement that the buildings be constructed for permanent use and therefore necessarily are permanent structures. The defendants thus claim that the trial court improperly defined both "sheds" and "buildings" in § 12-64 (a) without any permanent use requirement, thereby improperly including the hangars within their scope because the hangars are portable, temporary structures. We disagree with the defendants' proposed definition of "buildings." We are bound by our previous judicial interpretation of the language of § 12-64 (a); see *Kasica* v. *Columbia*, supra, 309 Conn. 93–94; in which we interpreted "buildings" as being "more or less" permanent, usually covered by a roof, and "more or less" completely enclosed by walls. See *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 412. This definition clearly encompasses the hangars, which may properly be described as "more or less permanent," even given their portable nature. Moreover, the defendants conceded at oral argument that some "sheds" are not permanent, thus, cutting against their proposed definition of "buildings." For purposes of § 12-64 (a), we decline to depart from our previous judicial interpretation of "buildings" which imposed no permanency requirement.

The defendants next claim that, in applying the rule of ejusdem generis to interpret "buildings" by reference to the characteristics of the other enumerated items in § 12-64 (a), the trial court should have concluded that the distinguishing characteristics of "buildings" are that they are permanent, immobile structures, perpetually affixed to the ground. They therefore claim that, because the hangars at issue are portable, their attributes materially distinguish them from the characteristics of the enumerated items of real property in § 12-64 (a). We again disagree. We are bound by our previous judicial interpretations of the language of § 12-64 (a); see *Kasica* v. *Columbia*, supra, 309 Conn. 93; in which we have construed "buildings" in § 12-64 (a), using the rule of ejusdem generis, as having the distinguishing characteristics of being "enclosed and . . . [suitable] for occupancy or storage"; *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 414; characteristics undoubtedly exhibited by the hangars.[11]

The defendants finally claim that the language of § 12-64 (a) is not clear and unambiguous, and that any ambiguity should be construed in favor of the taxpayer. *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, supra, 304 Conn. 214–15. Additionally, they claim that this court should look beyond the text of § 12-64 (a), undertake a fixture analysis, and con-

clude that the hangars are, instead of real property, personal property pursuant to § 12-71. However, other than noting that hangars are not expressly enumerated in § 12-64 (a) and urging their preferred definition of "building" that deviates from our previously established judicial interpretations of the term "building," the defendants do not advance with any specificity why the terms "sheds" or "buildings" are susceptible to more than one reasonable interpretation. See *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197–98, 3 A.3d 56 (2010) ("The process of statutory interpretation involves . . . the question of whether the language does so apply. . . . A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation. . . . [S]tatutory silence does not necessarily equate to ambiguity." [Internal quotation marks omitted.]). By failing to advance any other reasonable interpretations of these terms, the defendants have failed to show that the language is not clear and unambiguous, and, therefore, we need not apply the canon of statutory construction construing any ambiguity in favor of the taxpayer. See *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 235, 241, 983 A.2d 1 (2009) (declining to apply statutory presumption in favor of taxpayer because such presumptions apply "only in a case of a clear ambiguity in language which substantially leaves the statute equally open to different interpretations" and term at issue was sufficiently defined by reference to "the common understanding of the term as expressed in a dictionary" [internal quotation marks omitted]). We conclude that the terms "sheds" and "buildings" are clear and unambiguous.[12]

Having concluded that the trial court's construction of § 12-64 (a) was legally correct, we next examine whether these conclusions are supported by facts contained within the record. The trial court, with the consent of the parties, viewed the hangars at issue and found the following facts. "The [n]orth [r]amp [hangars] had shed-like metal walls with wooden cross-beams mounted with studs. The [hangars] are affixed to the ground by means of heavy spikes driven through openings in the metal base into the asphalt paving. . . . [The north ramp hangars had] trailer hitches so that [they] could be moved, but only by a heavy-duty truck." The trial court continued by finding that the south ramp hangars had "no visible hitches . . . [and were] identical to the [n]orth [r]amp [hangars] in having shed-like walls, cross-beams on the walls, attachment to the ground with heavy spikes, and wood frames on the bottom. The [s]outh [r]amp [hangars] are larger than the [n]orth [r]amp's and are more than one-story high. The [s]outh [r]amp [hangars] open similar to a garage, with a door that lifts. The [hangars] are equipped with electricity." Next, the trial court found that "[b]oth the [n]orth [r]amp and the [s]outh [r]amp [hangars] were

capable of being disassembled but it would require much effort as the spikes and boards would have to be removed and the walls collapsed." The trial court concluded that the hangars were used for and thus suitable for storage, and that hangars are shed-like insofar as they are buildings with walls and a roof. The trial court found that the hangars were "virtually permanent as any other building might be, even given that [the city of] Bridgeport or N.E. Hangar . . . could technically evict [the defendants] under the terms of the leases." In addition, the parties stipulated to the fact that these hangars are used for storage. The facts in the record clearly support the trial court's conclusion that the hangars are "buildings" under § 12-64 (a), in that they stand more or less permanently, have a roof, are enclosed by walls, and are suitable for storage. See *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 412. We therefore conclude that the trial court properly determined that the hangars were taxable either as "buildings" or as "sheds" pursuant to § 12-64 (a).[13]

B

Finally, the defendants claim that the trial court improperly failed to apply § 12-64 (b) and (c) to exempt the hangars from taxation. See footnote 9 of this opinion; *Hotshoe Enterprises, LLC* v. *Hartford*, 284 Conn. 833, 837, 937 A.2d 689 (2008) (per curiam) (affirming trial court's conclusion that § 12-64 [c] exempted condominium airplane hangars on Brainard Airport, an airport owned and operated by the state of Connecticut). The trial court articulated that "§ 12-64 (b) or (c) . . . clearly do not apply to the hangars themselves [as] [t]hese provisions apply to state-owned properties," the hangars are individually-owned property, and the land underneath the hangars is municipally-owned property. We agree with the trial court.

Section 12-64 (b) applies to "land [or] buildings . . . belonging to or held in trust for the state" and § 12-64 (c) applies to "land [or] building[s] . . . belonging to or held in trust for the state of Connecticut or . . . any general aviation airport or other airport, as such terms are defined in section 15-120aa . . . ." Section 15-120aa (4) defines " '[g]eneral aviation airports' " as "state-owned and operated general aviation airports, including Danielson Airport, Groton/New London Airport, Hartford Brainard Airport, Waterbury-Oxford Airport and Windham Airport, and such other airports as shall be owned, operated or managed by the [Connecticut Airport Authority] and designated as general aviation airports." Section 15-120aa (5) defines " '[o]ther airports' " as "any other airport as shall become owned, operated or managed by the [Connecticut Airport Authority] . . . ."

In the present case, the stipulated facts reveal that the land upon which the hangars lie is owned by the

city of Bridgeport, not the state of Connecticut, rendering § 12-64 (b) inapplicable by its express terms. Moreover, § 12-64 (c) is inapplicable because neither is the airport at issue expressly listed in § 15-120aa (4) as a "general aviation airport" nor are there facts in the record to suggest that the state of Connecticut or the Connecticut Airport Authority has ever owned, operated, or managed this airport.[14] We therefore affirm the judgment of the trial court and conclude that the trial court properly applied the entirety of § 12-64 to the hangars.

II

We next turn to the defendants' claim that the trial court improperly applied § 12-74 by failing to conclude that the tax exemption applicable to the land would become applicable to the hangars affixed on such tax exempt land. To this end, the defendants claim that the trial court should have determined that ownership of the hangars could not properly be assessed to the defendants; see *University of Hartford* v. *Hartford*, 2 Conn. App. 152, 159, 477 A.2d 1023 (1984) (trial court not clearly erroneous in concluding that mere leasehold interest was "insufficient indicium of ownership to qualify as 'real property' within the definition of the tax statutes" where "the building to be erected would be subject to a substantial measure of supervision and control by the lessor, not only in its design and construction but also in its subsequent operation"); because the trial court improperly found that the defendants failed to show the city of Bridgeport's control over the hangars such that ownership of the hangars would more properly lie with the city of Bridgeport, and not the defendants. We review the trial court's finding as to control over the hangars for clear error. See *McBurney* v. *Paquin*, supra, 302 Conn. 368.

"It is settled law in this state that real property taxes are normally assessed against the owner. *Lerner Shops of Connecticut, Inc.* v. *Waterbury*, 151 Conn. 79, 82–84, 193 A.2d 472 (1963); *Montgomery* v. *Branford*, 107 Conn. 697, 701, 142 A. 574 (1928). Leased property is assessed against the lessor as owner of the freehold estate; see *Montgomery* v. *Branford*, [supra, 701]; who by statute is obligated to pay the tax even [if] the lessee . . . agreed to pay the taxes. *Lerner Shops of Connecticut, Inc.* v. *Waterbury*, [supra, 84].

"There are, however, certain circumstances under which the lessee has been treated as the fee owner for tax purposes. See *Russell* v. *New Haven*, 51 Conn. 259 (1883); *Parker* v. *Redfield*, 10 Conn. 490 (1835) . . . ." (Citation omitted.) *University of Hartford* v. *Hartford*, supra, 2 Conn. App. 158–59. Such circumstances exist where, as in *Russell*, a lessee erects a building on land owned by another entity and ownership of the building is recognized as in the lessee. *Russell* v. *New Haven*, supra, 260. Even though the lessee's building may be

permanently affixed to the land and the parties do not contemplate its removal, the building is properly classified as real estate, not personal property, and is taxable in the name of the lessee without the benefit of any tax exemption for the underlying land. Id., 260, 262–63; see id., 262 ("[t]here is no practical difficulty in such a division of real estate"). The taxation principles established by *Russell* remain valid. See *Old Farms Associates* v. *Commissioner of Revenue Services*, 279 Conn. 465, 491, 903 A.2d 152 (2006) (citing to *Russell* as "concluding that building is part of realty and taxable to holder of title to building, when building was not erected for temporary purpose; neither party contemplated its removal; size and character of building, and materials of which it is constructed, precluded idea of removal; and there was contract provision pertaining to purchase of building").

Although the principles of *Russell* have never been overruled, in *University of Hartford* v. *Hartford*, supra, 2 Conn. App. 153–55, 157–58, the Appellate Court discussed whether lessees operating a dormitory on land owned by a trust company could be separately assessed for their building and leasehold interest under § 12-64 (a). The Appellate Court concluded that the trial court did not clearly err in concluding that the lessor's "substantial measure of supervision and control [over the lessee's building], not only in its design and construction but also in its subsequent operation," resulted in an "insufficient indicium of ownership [of the leasehold interest and building in the lessee] to qualify as 'real property' within the definition of the tax statutes . . . ." Id., 159.

In the present case, although the trial court concluded, and the parties agreed, that § 12-74 exempted from municipal taxation the land, owned by the city of Bridgeport, upon which the defendants placed their hangars, the trial court rejected the defendants' claim that the hangars' placement on the tax exempt land also rendered the hangars tax exempt. Instead, the trial court concluded that the hangars could not be tax exempt because, "[u]nder the long-standing precedent of *Russell* v. *New Haven*, [supra, 51 Conn. 262], the defendants are not taxed as lessee[s] of [the city of Bridgeport], but [rather] as owners of the [hangars]." The trial court also concluded that the defendants failed to show, pursuant to *University of Hartford*, that the city of Bridgeport exerted "a substantial measure of supervision and control" over the hangars such that the hangars would more properly be assessed, if not exempted, to the owner of the underlying land.

On appeal, the defendants claim that the trial court improperly failed to conclude that the factual predicates of *University of Hartford*—a showing of substantial control by the lessor over the lessee's property—were satisfied such that ownership of the hangars should

more properly be placed with the city of Bridgeport. The defendants attempt to demonstrate the city of Bridgeport's control by pointing to the town of Stratford's requirement that the hangars be built as portable structures—the same requirements as are applicable to mobile homes and back yard sheds—as well as the particular terms in the sublease between N.E. Hangar and the defendants that describe how the defendants may only use the hangars to store their aircraft and that the defendants may access the airport only with key-cards issued by the city of Bridgeport. However, the trial court also found—and, indeed, the parties stipulated—that each hangar is for the private use of their respective owners or occupants, that the south ramp hangars could be purchased with various options that included insulation, side or back doors, rubberized painted floor, work bench, and electronic hookups, and that the defendants could purchase their hangars from any supplier. Although the terms of the defendants' occupancy pursuant to the sublease with N.E. Hangar and the unwritten month-to-month lease with the city of Bridgeport evince some control by the lessor over the lessee's *access to the airport*, we cannot say that these terms necessarily amount to substantial control over the *hangars* such that *ownership* of the hangars is more properly placed in the city of Bridgeport. On the record before us, we conclude that the trial court did not clearly err in finding that the defendants failed to show a substantial measure of supervision and control over the hangars such that ownership should more properly be placed with the city of Bridgeport.

Accordingly, because *Russell* dictates that a lessee who owns a building on tax exempt land does not necessarily benefit from the land's tax exemption even if the lessee's building is permanently affixed to the tax exempt land, and because the defendants did not show that ownership of the hangars should nevertheless remain with the lessor, we conclude that the trial court properly determined that § 12-74 is inapplicable to the hangars at issue in the present case.

III

Finally, we address the defendants' claim that, if the hangars are real property subject to taxation pursuant to § 12-64 (a), the hangars should nevertheless be exempt from taxation under § 12-19a in order to prevent the plaintiff from double dipping by receiving a grant in lieu of taxes from the state pursuant to § 12-19a *and* property taxes from the defendants pursuant to § 12-64 (a). The trial court articulated that § 12-19a, a provision providing the plaintiff with a grant in lieu of taxes to defray the impact of the tax exemption of § 12-74, had no bearing on the present dispute because § 12-19a "concerns funding and does not affect the hangars themselves."

Although it is doubtful whether the defendants prop-

erly raised this claim in the trial court, we note that § 12-19a does not grant the plaintiff a power to tax, grant any party a tax exemption, or classify property for tax purposes. See footnote 10 of this opinion. We therefore agree with the trial court that § 12-19a "concerns funding and does not affect the hangars themselves" because the existence of § 12-19a does not affect our statutory construction of §§ 12-64 or 12-74. Even assuming the defendants properly raised this claim of "double dipping" before the trial court, there are no facts in the record to suggest that the plaintiff submits the assessed value of the hangars to the state, receives a grant in lieu of taxes that takes into consideration lost tax revenue relating to the hangars, and *also* seeks to assess the hangars to the defendants.[15] Therefore, we conclude that the trial court properly determined that § 12-19a was inapplicable to the present case.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The hangers at issue in the present case, which are referred to in the record and briefs as "T-Hangars," are T shaped aircraft hangars. These hangers do not have floors and are anchored to the ground.

[2] The defendants in SC 19332 are David Faile and N759ZD, LLC. The defendants in SC 19333 are Aminkhan Aladin, Howard Altman, ARB Aviation, LLC, John Auchincloss, Jack Bart, BBL 201 Associates, Richard Brosius, ERL, Inc., Flying Eagle Real Estate, LLC, Robert Frischette, Vincent Fusco, Raphael Jacobelli, Jest, LLC, Krosno Group, Inc., Christopher Lavin, Stanton Lesser, Lion Company, Inc., Richard McGowan, N.E. Hangar Development, LLC, Mike Neal, Tim Osborn, RGG Realty Corporation, Riverstone Holdings, LLC, Saquatucket Adventures, LLC, Brian Schiel, Austin Schraff, Herman Schuler, Sourcing Edge Associates, LLC, Chuck Tannen, Kendall R. Touissant, Traunet, LLC, Frank Vener, and Don Winters. For the sake of simplicity, unless otherwise noted, we refer to the defendants in these appeals collectively as the defendants and individually by name. See footnotes 4 and 6 of this opinion. We note that the following additional parties were also named as defendants in the declaratory judgment action: John Courtney, Frank Fasanella, Robert Gill, John M. Hmurcik, Morgan Kaolian, Jenn Matt Equipment, LLC, Robert Jones III, the Superior Plating Co., and O.G. Sexton. These parties, however, did not appeal from the judgment of the trial court.

[3] We note that the tax assessor for the town of Stratford, Melinda Fonda, is also a plaintiff in the underlying action. For the sake of simplicity, references to the plaintiff hereinafter include both the town of Stratford and Fonda.

[4] The defendants in SC 19332 and the defendants in SC 19333 filed separate appeals from the judgment of the trial court to the Appellate Court. We transferred both appeals to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). Because the claims raised in both appeals address the proper construction of General Statutes § 12-64 and other relevant statutes as they apply to the defendants' hangars, we address these appeals together.

[5] In view of the conclusion reached on this issue, we need not consider the defendants' argument that the hangars are tangible personal property pursuant to General Statutes § 12-71.

[6] We note that the defendants in SC 19332 own hangars exclusively located at the north ramp of the airport and that the defendants in SC 19333 own hangars located at both the north ramp and the south ramp of the airport. The differences between the north ramp and south ramp hangars are not relevant to our resolution of the present appeals.

[7] We note that § 12-64 has been amended by our legislature since the events underlying the present appeal. See, e.g., Public Acts 2013, No. 13-277, § 61; Public Acts 2014, No. 14-122, § 87. These amendments, however, have no bearing on the merits of these appeals. See footnote 14 of this opinion. In the interest of simplicity, unless otherwise noted, we refer to the current revision of the statute.

[8] General Statutes § 12-74 provides: "All property owned by any town or

city, which is located in another town and used for the purposes of an airport, shall be exempt from taxation as long as it continues to be used for such purposes and as long as the town in which it is located has the same privileges as to the use of such airport as are possessed by the municipality owning the same; but, if any such airport is leased to any person, association or private corporation, or is used in such manner as to become a source of profit to the municipality owning the same, the land so occupied and situated in any adjoining town or towns shall thereupon be subject to taxation.''

[9] General Statutes § 12-64 provides, in relevant part: "(b) Except as provided in subsection (c) of this section, any land, buildings, or easement to use air rights *belonging to or held in trust for the state*, not used for purposes attributable to functions of the state government or any other governmental purpose but leased to a person or organization for use unrelated to any such purpose . . . shall be [taxable to the lessee] . . . .

"(c) The provisions of subsection (b) of this section shall not be applicable to (1) any land, building, or easement *belonging to or held in trust for the state of Connecticut* or the Connecticut Airport Authority at Bradley International Airport *or any general aviation airport or other airport, as such terms are defined in section 15-120aa* . . . ." (Emphasis added.)

[10] General Statutes § 12-19a (a) provides, in relevant part: "On or before January first, annually, the [s]ecretary of the [o]ffice of [p]olicy and [m]anagement shall determine the amount due, as a state grant in lieu of taxes, to each town in this state wherein . . . a municipally owned airport . . . is located. The grant payable to any town under the provisions of this section . . . shall be equal to the total of . . . [45 percent] of the property taxes . . . which would have been paid with respect to all municipally owned airports; except for the exemption applicable to such property, on the assessment list in such town . . . . [T]he grant applicable to Sikorsky Airport shall be paid half to the town of Stratford and half to the city of Bridgeport . . . ."

We note that § 12-19a has also been amended by our legislature since the events underlying the present appeal. See, e.g., Public Acts 2014, No. 14-47, § 22. These amendments, however, have no bearing on the merits of these appeals. In the interest of simplicity, we refer to the current revision of the statute.

[11] The defendants claim that we should not rely on this court's previous application of the rule of ejusdem generis to "buildings" in *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 413, a case in which this court interpreted the term "buildings" in § 12-64 (a) as not encompassing a communications tower. Specifically, the defendants claim that, because the legislature, in response to *Montville*, subsequently amended § 12-64 (a) by adding the word "structure," we should not rely on *Montville*'s interpretation of § 12-64 (a) because the legislative amendment changed what we may properly glean from the enumerated items in § 12-64 (a) such that these items no longer have the same distinguishing characteristics as they did in *Montville*. See Public Acts 1993, No. 93-64, § 1. We disagree. The word "structure" was inserted *after* the enumerated items in § 12-64 (a), all of which remained the same; therefore, the characteristics of the enumerated items did not change from such insertion. We continue to be bound by our interpretation of "buildings," gleaned from the enumerated items in § 12-64 (a), which we construed as having the distinguishing characteristics of being "enclosed and . . . [suitable] for occupancy or storage . . . ." *Eastern Connecticut Cable Television, Inc.* v. *Town of Montville*, supra, 180 Conn. 414.

The defendants also claim that the trial court improperly relied on *Gordon* v. *Board of Civil Authority for the Town of Morristown*, 180 Vt. 299, 300, 910 A.2d 836 (2006), which held that a hangar was a building and therefore taxable as real property pursuant to a Vermont taxing statute. In interpreting § 12-64 (a), the trial court applied the rules of statutory construction to make its conclusion; it did not rely on *Gordon* as the basis of its decision. This claim is without merit.

[12] At oral argument before the trial court and this court, the defendants also claimed that the language of § 12-64 (a) that affirmatively authorizes assessment of tax in the name of a lessee of land used for residential purposes; General Statutes § 12-64 (a) ("[i]f the interest in real estate consists of a lease of land used for residential purposes which allows the lessee to remove any or all of the structures, buildings or other improvements on said land erected or owned by the lessee, which lease is recorded in the land records of the town and provides that the lessee shall pay all taxes with respect to such structures, buildings or other improvements, said inter-

est shall be deemed to be a separate parcel and said structures, buildings or other improvements shall be separately assessed in the name of the lessee"); prohibits, by negative implication, assessment of tax in the name of a lessee of land used for *commercial* purposes. See *Pepin* v. *Danbury*, 171 Conn. 74, 88, 368 A.2d 88 (1976) ("a municipality may exercise the taxing power only to that extent to which such power has been specifically granted by the legislature" [internal quotation marks omitted]); *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, supra, 298 Conn. 205 ("legislature knows how to convey its intent expressly"); *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 413, 999 A.2d 682 (2010) ("when a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]). We decline to review this claim, as it was raised only at oral argument. See *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 317 n.10, 71 A.3d 492 (2013); cf. *Calcano* v. *Calcano*, 257 Conn. 230, 244, 777 A.2d 633 ("[o]ur practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument" [internal quotation marks omitted]).

[13] Although we conclude that the hangars are properly classified as "buildings" pursuant to § 12-64 (a), the hangars would also properly be classified as "sheds," a term which the Appellate Court has previously defined in a case interpreting zoning regulations. See *Mountain Brook Assn., Inc.* v. *Zoning Board of Appeals*, 133 Conn. App. 359, 373, 37 A.3d 748 (2012) ("[a] small structure, either freestanding or attached to a larger structure, serving for storage or shelter" [internal quotation marks omitted]), quoting American Heritage Dictionary (2d College Ed. 1985); *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 413 ("a building is always a structure"). The facts in the record would support this classification.

[14] The trial court ostensibly applied General Statutes (Rev. to 2011) § 12-64 (c), which the legislature subsequently amended in 2013. See Public Acts 2013, No. 13-277, § 61 (noting that amendment is "applicable to assessment years commencing on and after October 1, 2012"); see also footnote 7 of this opinion. The 2013 amendment to § 12-64 (c) does not, however, change the result reached in the present case. In 2013, the legislature amended the phrase "land [or] building[s] . . . belonging to or held in trust for the state of Connecticut . . .or any other state-owned airport" by removing the words "other state-owned airport" and replacing them with "general aviation airport or other airport, as such terms are defined in section 15-120aa . . . ." See Public Acts 2013, No. 13-277, § 61. Neither version of § 12-64 (c) applies to the airport in the present case, which is neither owned nor operated by the state of Connecticut.

[15] Indeed, the only real allegation of double dipping appears to be linked with the defendants' claim that the plaintiff had assessed vacant *land* at the airport to the defendants, a claim that was not properly before the trial court because it does not address the proper classification of the hangars for tax purposes.